150 N.J. Super. 373 (1977)
375 A.2d 1202
L.J., PLAINTIFF-APPELLANT,
v.
J.B., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 2, 1977.
Decided May 20, 1977.
*375 Before Judges FRITZ, ARD and PRESSLER.
Mr. George Brunelle, attorney for the appellant.
Messrs. Love & Randall, attorneys for the respondent (Mr. Harold W. Fullilove on the brief).
PER CURIAM.
Plaintiff filed a complaint pursuant to N.J.S.A. 9:16-2 et seq. in the Belleville Municipal Court for support of her child born out of wedlock. Upon being determined the father of the child, defendant appealed to the County Court pursuant to R. 5:5-9(f). Thereafter, in a de novo jury trial, a verdict was returned in favor of defendant holding that he is not the father of the child. Plaintiff appeals.
The primary question on appeal is whether the trial judge permitted testimony which violated plaintiff's attorney-client privilege. There was no objection below, and it is now urged that the alleged error is of such magnitude as to constitute plain error. R. 2:10-2.
In the course of presenting his defense defendant called Frank Salsano, a welfare department employee, who testified *376 that he had interviewed plaintiff on January 22, 1976 and that in response to his questioning she advised him that March 21, 1975 was the only time she had had intercourse with defendant. This testimony was produced to impeach plaintiff's testimony which alleged intercourse on several occasions, and also to suggest an inconsistency with the testimony of defendant's fellow police officer, Fred Mitchell, who had accounted for the activities of defendant on March 21, 1975.
Although there was no objection to Salsano's testimony at the time he testified, plaintiff now asserts Salsano's testimony was privileged and its admission plain error.
We disagree. It is only communications between the lawyer[1] and the client that are privileged. The lawyer-client privilege is covered by Evid. R. 26. In pertinent part the rule is as follows:
(1) General rule. Subject to Rule 37 and except as otherwise provided by paragraph 2 of this rule communications between lawyer and his client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (a) to refuse to disclose any such communication, and (b) to prevent his lawyer from disclosing it, and (c) to prevent any other witness from disclosing such communication if it came to the knowledge of such witness (i) in the course of its transmittal between the client and the lawyer, or (ii) in a manner not reasonably to be anticipated, or (iii) as a result of a breach of the lawyer-client relationship, or (iv) in the course of a recognized confidential or privileged communication between the client and such witness. The privilege shall be claimed by the lawyer unless otherwise instructed by the client or his representative; the privilege may be claimed by the client in person, or if incompetent or deceased, by his guardian or personal representative. * * *

* * * * * * * *
(3) Definitions. As used in this rule (a) "client" means a person or corporation or other association that, directly or through an authorized representative, consults a lawyer or the lawyer's representative for the purpose of retaining the lawyer or securing legal *377 service or advice from him in his professional capacity; * * * (b) "lawyer" means a person authorized, or reasonably believed by the client to be authorized to practice law in any State or nation the law of which recognizes a privilege against disclosure of confidential communications between client and lawyer. * * *
For a communication to be protected under Evid. R. 26 it must have been made in confidence between a lawyer and a client in the course of the professional relationship. Just as lawyers are forbidden to violate a professional confidence, so are the agents of a lawyer who engage in communications with the client. However, whether the communication be made to the lawyer or his agent, the sine qua non of the privilege is that the client has consulted the lawyer in the latter's capacity as an attorney. See Hansen v. Janitschek, 31 N.J. 545 (1960), rev'g 57 N.J. Super. 418, 429-436 (App. Div. 1959) on the dissenting opinion below. In that dissenting opinion Judge Conford stated:
The attorney-client privilege has a well-defined place in our jurisprudence, and where it is properly applicable, must be given as broad a scope as accords with its rationale  safeguarding a client's freedom from apprehension in consulting his legal advisor, assured by removing the risk of disclosure by the attorney, even at the hand of the law. State v. Kociolek, 23 N.J. 400, 415 (1957). Nevertheless, since the privilege results in the exclusion of evidence, the doctrine "runs counter to the fundamental theory of our judicial system that the fullest disclosure of facts will best lead to the truth and ultimately to the triumph of justice." In re Selser, 15 N.J. 393, 405 (1954). It is therefore to be strictly limited to the purposes for which it exists. Ibid., and at pages 406, 407. In Palatini v. Sarian, 15 N.J. Super. 34 (App. Div. 1951), it was held that even where a general relation of client and attorney exists, written or oral communications from the client to the attorney having only to do with the latter's agency to act for the former in a particular matter as an agent or attorney in fact do not come within the privilege. The court quoted with approval (at p. 41) Wigmore's phrasing of the essentials of the privilege as: "(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client * * * [are protected unless waived]," 8 Wigmore on Evidence (3d. ed. 1940), § 2292, p. 558. * * * [57 N.J. Super. at 433-434]
*378 Thus, while we are satisfied the privilege should be zealously protected, the rule still clearly requires the person seeking to invoke it to establish as a condition precedent that the communication occurs while the client consults a lawyer or lawyer's representative "for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity." The record is barren of such proof in the instant case, and plaintiff's brief, while amply citing numerous authorities in support of the public policy for protecting communications between attorney and client, contains no factual assertion or basis to conclude an attorney-client relationship existed at the time plaintiff met with Salsano. The burden of proof rests on the person asserting the privilege to show that the consultation was a professional one. McCormick, Evidence, § 92 at 184 (1954).
In the instant case our review of the record discloses no basis to conclude that plaintiff was consulting Salsano for the purpose of retaining a lawyer or securing legal advice. No such allegation was made at trial. The communication plaintiff asserts to be privileged was a statement to the welfare board taken by Salsano. Any subsequent decision to have plaintiff file a complaint against the punitive father does not bring the original interview within the privilege.
Salsano was employed by the Essex County Welfare Board. His title was Supervisor of Case Work, Legal Department. He testified his duties were "to supervise approximately 17, 18 workers who deal with clients." His testimony provides no basis to conclude that L.J. was consulting him as an agent of her already retained attorney or with the purpose of retaining his principal, an attorney. To determine otherwise would be to engage in speculation and conjecture.
Affirmed.
NOTES
[1] Our reference herein to "lawyer" is intended to include the "lawyer's representative." See Evid. R. 26(3) (a); State v. Tapia, 113 N.J. Super. 322, 330 (App. Div. 1971).