165 N.J. Super. 211 (1978)
397 A.2d 1132
IN THE MATTER OF THE GRAND JURY SUBPOENA DUCES TECUM SERVED UPON S. DAVID LEVY, DEPUTY PUBLIC DEFENDER, UNION COUNTY.
Superior Court of New Jersey, Law Division (Criminal).
Decided December 21, 1978.
*214 Mr. John H. Stamler, Union County Prosecutor for the State (Mr. Raymond Zeltner, Assistant Prosecutor appearing; Mr. Paul A. Massaro, Assistant Prosecutor on the brief).
Mr. Stanley C. Van Ness, Public Defender, for S. David Levy, Assistant Public Defender (Mr. John M. Cannel, Assistant Public Defender, appearing on the brief).
DIBUONO, A.J.S.C.
This cause is before the court on motion to quash subpoena duces tecum from the Union County Grand jury served upon S. David Levy, Deputy Public Defender for Union County.
The facts and circumstances underlying this motion are not substantially in dispute, and are as follows:
On September 22, 1977 a defendant, R.J.B., under indictment in Union County, completed a two part form known as an L-R-20. Part 1 is an application for representation by the Public Defender, and the other is an affidavit of defendant's income and assets. The only asset listed by the defendant was personal property having a value of $500. Defendant's application as an indigent was accepted and the Public Defender represented him through his guilty plea and sentence.
Two days prior to the time he made application to the Public Defender for representation, the defendant had withdrawn $2,829.50 from checking account #XXX-XXX-XX at the New Jersey Savings Bank in Hunterdon County. On December 19, 1977 defendant posted a cash bail for himself and a co-defendant in the form of a Certified Check in the sum of $2,000.00 drawn on account #XXXXXXXXX in the Hunterdon Trust Company. After the withdrawal of the bail money, a balance of $972.35 remained. These two accounts were closed on or about January 12, 1978, 3 1/2 months subsequent to defendant's application for legal aid.
Defendant is also believed to have had an interest in a third account in the Hunterdon County Trust Company in *215 the name of Landmark Service, as indicated by a signature card, authorizing withdrawals signed by the defendant R.J.B., and the same codefendant. This account was opened on November 25, 1977 within about two months of defendant's application for representation by the Public Defender because of alleged indigency. On December 12, 1977, this account had a cash balance of $5,874.74.
The Union County Prosecutor's Office, by reason of a continuing investigation, believes that defendant may have knowingly and intentionally misrepresented his assets to the Public Defender in order to fraudulently procure legal services. The prosecutor asserts that the Public Defender may be in possession of evidence which would tend to indicate that defendant did, in fact, perpetrate a fraud upon the Public Defender.
On June 21, 1978 S. David Levy, Deputy Public Defender for Union County, was served with a subpoena duces tecum from the Union County grand jury to "produce copies of all financial investigation reports which relate to R.J.B.'s application to the Public Defender's including but not limited to credit reports, investigation notes, investigative memoranda, incorporation papers, mortgage records, promissory notes, financial statements and any invoices or billings from the office of the Public Defender to R.J.B." This motion is made to quash that subpoena on the grounds that it asks for information protected by the attorney-client privilege.
The court addresses itself, therefore, to the single issue of whether information touching upon a defendant's indigency, given by a defendant to the Public Defender or obtained by the Public Defender in its investigation, is protected by the attorney-client privilege.
That the attorney-client privilege is essential to the maintenance of a client's faith in counsel and is designed to facilitate free exchange between the client and his attorney is well recognized. In re Richardson, 31 N.J. 391 (1960); State v. Kociolek, 23 N.J. 400 (1957).
*216 It is also clear that each defendant represented by the Public Defender's Office possesses an attorney-client privilege. N.J.S.A. 2A:158A-12 states in pertinent part:
* * * All communications between the individual defendant and any person in or engaged by the Office of the Public Defender whether on a case basis or by contract shall be fully protected by the attorney-client privilege to the same extent and degree as though counsel has been privately engaged.
Nevertheless, the attorney-client privilege does not protect communications concerning misconduct, criminal activity, or fraudulent acts in which the client is presently engaging. In re Selser, 15 N.J. 393 (1954); Burlington Industries v. Exxon Corp., 65 F.R.D. 26 (D. Md. 1974); Securities Exchange Commission v. Harrison, 80 F. Supp. 226 (D.D.C. 1948). Mr. Justice Cardozo summarized this rule of law for a unanimous court in Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933) wherein he stated:
There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told. 289 U.S. at 15, 53 S.Ct. at 469.
The attorney-client privilege developed in the common law and was first recognized in New Jersey in Matthews v. Hoagland, 48 N.J. Eq. 455 (Ch. 1891), and is codified in N.J.S. 2A:84A-20. However, this statute also provides that
* * * Such privilege shall not extend (a) to a communication in the course of legal service sought or obtained in the aid of the commission of a crime or a fraud * * * [Emphasis supplied]
Among the disclosures that courts have ordered attorneys to reveal are the fact of a retainer, the identity of the defendant, the conditions of employment and the amount of the fee. In re Semel, 411 F.2d 195 (3 Cir. 1969).
*217 Additionally, courts have ordered disclosure of nonprivileged documents which relate directly to the crime of fraud. Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). In Fisher the Supreme Court considered whether the Fifth Amendment precludes the Internal Revenue Service from obtaining reports and tax returns prepared by the accountants of defendant in the possession of defendant's attorney. Although the court relied primarily on the Fifth Amendment to compel the disclosure of the Federal income tax returns and reports in question, it did consider at length the attorney-client privilege and determined that the privilege is strictly limited to the purposes for which it exists. Id., at 404, 95 S.Ct. 1569.
The Public Defender is obliged to conduct an investigation pursuant to N.J.S. 2A:158A-15, which provides:

Financial status of defendant;
investigation:
The Office of the Public Defender shall make such investigation of the financial status of each defendant at such time or times as the circumstances shall warrant and in connection therewith shall have the authority to require a defendant to execute and deliver such written requests or authorizations as may be requisite under applicable law to provide the office with access to records of public or private sources, otherwise confidential, as may be of aid to it in evaluating eligibility. The office is authorized to obtain information from any public record office of the State or of any subdivision or agency thereof on request and without payment of the fees ordinarily required by law.
It is the opinion of this court that this statute relates to defendant's indigency and not to the matter for which defendant seeks representation. Furthermore, such information obtained by the Public Defender is not protected by the "work product" privilege as enunciated in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1946), and State v. Montague, 55 N.J. 387 (1970), since it does not pertain to the Public Defender's strategy or private thoughts, nor in any manner touch upon the charges made against defendant.
*218 The nature, function and extent of the duties of the Office of the Public Defender are not without complexity. While the Office has a unique character in that it is created for the defense of indigents, the Public Defender, as a public officer, owes a fiduciary duty to the people. Callahan v. Kambour, 49 Misc. 2d 280, 267 N.Y.S.2d 259 (Sup. 1965). As an attorney, such an appointed public officer also has a duty to the court. In re Callan, 66 N.J. 401 (1975); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). As such, he must strive to promote the ends of justice. For a lawyer to knowingly assist his client in the commission of a fraud is a breach of trust for which an attorney can be disciplined. Disciplinary Rule 7-102(B) (1); In re Callan, supra. While it is not in any manner contended that the Public Defender assisted the defendant in the commission of a fraud, it is the opinion of this Court that the Public Defender has a duty to reveal evidence in his possession which may establish that a fraud was perpetrated upon his office.
The importance of the attorney-client relationship and its protection has been expressed by the Supreme Court in United States v. Nobles, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975):
Historically, a lawyer is an officer of the Court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy free from unnecessary intrusion by opposing parties and their counsel ... That is the historical and the necessary way in which lawyers act within the framework of our system of justice. 422 U.S. at 237, 95 S.Ct. 2169.
This court is cognizant of the importance of permitting attorneys to work free of governmental interference in their representation of clients. However, the disclosure of the information sought by the grand jury in the instant case, does not constitute an unnecessary intrusion because the grand jury investigation substantially outweighs the competing interest *219 of lawyer-client privacy. In re Grand Jury Subpoena Duces Tecum, 143 N.J. Super. 526 (Law Div. 1976).
A grand jury has broad power in its investigation of whether a criminal statute may have been violated or whether other wrongoing may exist. United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); In re Grand Jury Subpoena Duces Tecum, supra. Furthermore, a grand jury is not limited to exploring specific charges already made but rather may investigate on its own initiative, and may return presentments on conditions of public interest even though there is no violation of a criminal statute. In re Addonizio, 53 N.J. 107, 124 (1968). However, it is also recognized by this court that a grand jury request for testimony or a request by way of a subpoena duces tecum must conform with the reasonableness requirements of the Fourth and Fifth Amendments. Oklahoma Publishing Co. v. Walling, 327 U.S. 186, 208, 66 S.Ct. 494, 90 L.Ed. 614 (1945). In re Addonizio, supra, 53 N.J. at 118.
Viewing the pertinent facts in the instant case, the State has clearly shown that the requested documents bear relevance to a legitimate grand jury investigation. The grand jury is attempting to determine whether persons who are not indigent are seeking and receiving representation by the Public Defender, thereby creating an unjust financial burden upon the citizens of this State. The subpoena duces tecum under these circumstances is not violative of the defendant's rights, particularly where the defendant has already been tried and sentenced in the matter for which he was represented by the Office of the Public Defender.
The motion to quash the subpoena duces tecum is denied.