204 N.J. Super. 618 (1985)
499 A.2d 1030
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES COLE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 11, 1985.
Decided October 24, 1985.
*620 Before Judges O'BRIEN and SIMPSON.
Thomas S. Smith, Acting Public Defender of New Jersey, attorney for appellant (Gail M. Lambert, designated counsel, of counsel and on the brief).
*621 Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent (James R. Wronko, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Defendant appeals from his conviction of receiving stolen property in violation of N.J.S.A. 2C:20-7 a upon which he was sentenced to a term of five years and assessed an appropriate penalty payable to the Violent Crimes Compensation Board. We affirm.
On July 31, 1983, defendant and June Callahan, wife of defendant's then-employer, entered into a written agreement[1] under which Mrs. Callahan loaned her motor vehicle to defendant for a period of two weeks while she was on vacation. The agreement restricted use of the vehicle to Pinellas County, in the State of Florida, although it was the intention of the parties that defendant use the vehicle to commute to work and, according to defendant, he resided in another county. It is clear that defendant was not given permission to remove the vehicle from the State of Florida. Thereafter, defendant was found in possession of the vehicle in New Jersey on October 3, 1983. The vehicle displayed the same Florida license plate which had been issued to Mrs. Callahan who had reported her vehicle stolen when defendant failed to return it to her as required by the agreement.
On this appeal, defendant raises the following appellate arguments:
POINT I THE DEFENDANT DID NOT HAVE A FAIR OPPORTUNITY TO REVIEW THE DISCOVERY MATERIALS AND SHOULD HAVE BEEN GRANTED A CONTINUANCE.

*622 POINT II THE DEFENDANT DID NOT KNOWINGLY AND INTELLIGENTLY WAIVE HIS RIGHT TO COUNSEL GUARANTEED HIM UNDER THE FEDERAL AND STATE CONSTITUTIONS.
POINT III THE PROOFS SUBMITTED AND THE REASONABLE INFERENCES WHICH CAN BE DRAWN THEREFROM FAIL TO SHOW MORE THAN CIVIL CONVERSION.
We first address defendant's second point. Defendant was indicted on November 17, 1983 and arraigned on November 28, 1983. A representative of the public defender's office appeared for defendant at the arraignment and received a copy of the discovery. At his arraignment, defendant stated that he had submitted a motion for the assignment of counsel through the court. Thereafter, defendant refused to complete the form 5A, required by the public defender to ascertain defendant's eligibility for representation. We are told that defendant based his refusal to complete the form 5A on constitutional grounds, but nothing has been argued in support of that contention.
On the day of trial, January 31, 1984, extensive colloquy ensued between the trial judge and defendant concerning representation by counsel. At that time, defendant stated:
Your Honor, I read the form, the form as to what you're talking about, and it specifically states that if a representative from the Public Defender's Office was to help me as guidance or whatnot, that that person would have the right to use any strategies or any ways of law that I would deem right or wrong, you know, and they would waive my rights thereto.
At that time, defendant read the following from a form:
... an indigent defendant is not to be unfairly treated.
He has the opinion [sic] of being represented by the office of the Public Defender, not receiving all of the services and facilities provided by the Public Defender's Office.
If he elects not to accept our representation, but to waive counsel and proceed pro se, then he must understand that he is voluntarily relinquishing the benefit that goes with such representation.
The case is cited is State v. Docking [sic], and under such circumstances, he may have the assistance of a legal advisor in the courtroom, but beyond that he cannot expect resources of the office of the Public Defender to be at his command.
The public defender appointed counsel to appear at trial as legal advisor for defendant. Defendant told the court "I just cite those cases, your Honor, and I will agree to what you said *623 that's on the record. I will accept the legal advisor."[2] Thereafter, defendant waived trial by jury and a bench trial ensued during the course of which defendant conducted his defense pro se, but occasionally conferred with the assigned legal advisor. The trial judge found defendant guilty.
In Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the Court said:
The constitutional right of an accused to be represented by Counsel invokes, of itself, the protection of a trial court, in which the accused  whose life or liberty is at stake  is without Counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to Counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record. [304 U.S. at 465, 58 S.Ct. at 1023, 82 L.Ed. at 1467.]
Perfunctory questioning is not sufficient. This is true even when the trial judge strongly suspects that defendant's requests are disingenuous and designed solely to manipulate the judicial process and to delay the trial. United States v. Welty, 674 F.2d 185 (3d Cir.1982). The trial judge has the responsibility of insuring that any choice of self representation is made knowingly and intelligently, with an awareness of the dangers and disadvantages inherent in defending oneself. See Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 582 (1975). To be valid, a defendant's waiver "must be made with apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof and all other facts essential to a broad understanding of the whole matter." Von Moltke v. *624 Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309, 321 (1948).
The discussion between the trial judge and defendant concerned defendant's refusal to execute the form 5A, as a result of which the public defender would not represent him. Although defendant attempted to create the impression that the judge was insisting upon him representing himself, the trial judge repeatedly disavowed this and pointed out that another judge, probably the criminal assignment judge, had made arrangements for the public defender "to have an attorney from their office represent you, from the standpoint of merely giving you legal advice and guidance as to the legal aspect of your case, but not to represent you." Yet it does not appear from the record that the trial judge advised defendant of the statutory offenses included within the charges nor the range of allowable punishment thereunder. However, defendant does not deny that the vehicle was in his possession, but rather contends that his retention of Mrs. Callahan's vehicle beyond the time in which their contract required its return was but a breach of contract and not a criminal act.
The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. Johnson v. Zerbst, 304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. at 1468. The presentence report reveals that defendant was 55 years of age at the time of trial and had a long and serious prior criminal record which began when he was a juvenile in 1940 and continued throughout his adult life. He has served substantial time in prison on a variety of offenses including crimes involving thefts.
Eligibility for the services of the public defender must be determined on the basis of the need of the defendant. See N.J.S.A. 2A:158A-14; see also State v. Cantalupo, 187 N.J. Super. 113, 121 (App.Div. 1982) (a case cited by defendant during *625 the course of his colloquy with the trial judge concerning representation). Thus, it is necessary to fill out and sign a form 5A so that the public defender can make a determination of eligibility as required by the statute. Yet, defendant refused to execute the form 5A. Defendant acknowledged his understanding that a decision to waive counsel and proceed pro se must be voluntarily made by him. Therefore, the only question presented is whether defendant intelligently waived his right to counsel since the trial judge did not specifically outline the statutory offenses included within the charges against defendant, the range of allowable punishments thereunder, and possible defenses and circumstances in mitigation.
Normally, "[a] judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309, 321 (1948). However, in this case, in light of defendant's background, experience and familiarity with the criminal law, we conclude that his was a voluntary, competent and intelligent waiver of counsel. We further note that his cross-examination of the witnesses was reasonably competent. Furthermore, he explained his decision not to testify:
I didn't take the stand, your Honor, in view of the fact that I'm a convicted felon.
I didn't want to go into that, but I can say that I didn't leave the State of Florida and I didn't leave with the truck with intent to steal.
Defendant's possession of the vehicle was undisputed, and his contention that conversion of the vehicle was merely a breach of contract and not a criminal act was clearly made. It would be a perversion of the administration of criminal justice to permit this seasoned criminal, who refused to comply with the requirements of our law in order to obtain the services of the *626 public defender, and who was assisted by a lawyer,[3] and who competently conducted his own defense, to have his conviction reversed on the ground that he had not intelligently and competently waived counsel. This result was aptly described by former Chief Justice Hughes in his dissenting opinion in State v. McCombs, 81 N.J. 373 (1979):
The result leaves me with the uneasy feeling that an adroit and court-wise defendant, in a serious case of alleged criminal violence, has been successful in hoodwinking both trial and appellate courts to the disadvantage of the true administration of justice. [Id. at 390]
The related contention by defendant that he was deprived of his right to effectively represent himself since he had not received the discovery until the day before trial is likewise without merit. On the second day of trial defendant moved for a mistrial since he didn't receive full discovery from the prosecutor as to the witnesses until the day before trial. The discovery had been delivered to the public defender appearing on behalf of defendant at arraignment who did not deliver it to defendant personally.[4]
It is suggested that the trial judge should have construed defendant's motion for a mistrial as a motion for a continuance to afford him the opportunity to review the discovery. The nature of the discovery does not appear except as to the agreement between the parties, of which defendant himself had a copy, and the grand jury minutes. The only witnesses called by the State at trial was the New Jersey police officer who found the vehicle in New Jersey and Mrs. Callahan, who came up from Florida. The witnesses called before the grand jury and the length of the grand jury minutes is not disclosed, but certainly defendant had ample time to review those minutes before conducting his cross-examination of the *627 State's witnesses. The motion for a mistrial was addressed to the trial judge's discretion. See State v. Witte, 13 N.J. 598 (1953). We see no abuse of discretion in the denial of that motion, nor basis to construe the motion as one for a continuance. Nothing appears from the record to support the conclusion that defendant was in any way prejudiced by the delay in receiving the balance of the discovery materials. See State v. Kyles, 132 N.J. Super. 397 (App.Div. 1975), where we affirmed the denial of an adjournment because of the failure of subpoenaed defense witnesses to appear since there was nothing to show what the witnesses would have testified to and thus no demonstrated prejudice. Similarly, in this case there is nothing to show that defendant was prejudiced by not having all of the discovery materials until the day before trial.
The final issue advanced by defendant is addressed to the merits of the charge. The trial judge disagreed with defendant's contention that his conversion of the vehicle was merely a breach of contract rather than a criminal act.
The one-count indictment charged that defendant:
[D]id commit the crime of theft by knowingly receiving movable property, to wit: a 1978 Ford pick-up truck, belonging to June Callahan, knowing that it had been stolen or believing that it had probably been stolen, contrary to the provisions of N.J.S. 2C:20-7(a)....
It is not disputed that defendant originally received the vehicle lawfully under a contract with the owner. Although suits for breach of contract and conversion may be primarily civil proceedings, defendant is charged with a criminal offense. The theory of the State's case was that the vehicle had been stolen when defendant failed to return it as required by his agreement with the owner and removed it from the State of Florida. There is no question that defendant was in possession of the vehicle in the State of New Jersey. The trial judge concluded that defendant knew the vehicle was stolen since he was the person who had stolen it. The trial judge reasoned that defendant knowingly brought this vehicle into the State of New Jersey knowing that it had been stolen in violation of N.J.S.A. 2C:20-7 which provides:

*628 (a) Receiving A person is guilty of theft if he knowingly receives or brings into this State movable property of another knowing that it has been stolen, or believing that it is probably stolen. It is an affirmative defense that the property was received with purpose to restore it to the owner. `Receiving' means acquiring possession, control or title, or lending on the security of the property.
While it may not be clear as to whether defendant "received" the stolen vehicle in the State of Florida or somewhere else before coming to New Jersey, it is eminently clear that he brought movable stolen property into the State of New Jersey.[5] We recognize that the indictment recites that defendant committed the crime of theft by knowingly "receiving" movable property, rather than by "[bringing] it into this State ... knowing that it had been stolen." However, in the New Jersey Code of Criminal Justice, the Legislature has consolidated theft offenses. N.J.S.A. 2C:20-2 provides:
(a) Consolidation of Theft Offenses Conduct denominated theft in this chapter constitutes a single offense, but each episode or transaction may be the subject of a separate prosecution and conviction. A charge of theft may be supported by evidence that it was committed in any manner that would be theft under this chapter, notwithstanding the specification of a different manner in the indictment or accusation, subject only to the power of the court to insure fair trial by granting a bill of particulars, discovery, a continuance, or other appropriate relief where the conduct of the defense would be prejudiced by lack of fair notice or by surprise. [Emphasis supplied.]
See State v. Talley, 94 N.J. 385 (1983), where the Court construed this provision to authorize conviction of a defendant of theft by deception (N.J.S.A. 2C:20-4) where he had been indicted for armed robbery (N.J.S.A. 2C:15-1). Similarly, the language of the indictment in this case does not preclude defendant's conviction of theft by receiving stolen property based upon his having brought that movable property of another into the State of New Jersey knowing that it had been stolen. Nor is there anything to indicate that defendant was surprised by this contention by the State.
*629 By his decision, the trial judge rejected defendant's contention that the vehicle was not stolen since he did not intend to deprive the owner permanently of her property. Rather, the judge accepted the State's argument that removing the vehicle from the State of Florida and retaining it for almost two months beyond the date when it was required to be returned under the agreement, support the inference that defendant intended to deprive the owner permanently of her property. We agree that the evidence supports that inference. It may further be inferred that the theft occurred at the time defendant converted the vehicle to his own use. This seems to have occurred in the State of Florida where defendant made the decision not to return the vehicle and to take it out of the state. We note that under the law of the State of Florida, a person is guilty of theft:
If he knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
........
(b) Appropriate the property to his own use or to the use of any person not entitled thereto. [Fla. Stat. Ann. § 812.014 (West 1985).]
We also observe § 817.52(3) of Florida's criminal statutes which provides:
(3) Failure to redeliver hired vehicle  Whoever, after hiring a motor vehicle under an agreement to redeliver the same to the person letting such motor vehicle or his agent, at the termination of the period for which it was let, shall, without the consent of such person or persons and with intent to defraud, abandon or willfully refuse to redeliver such vehicle as agreed shall, upon conviction, be guilty of a felony of the third degree, punishable as provided in § 775.082, § 775.083, or § 775.084. [Fla. Stat. Ann. § 817.52(3) (West 1976).]
In an analogous situation, we held:
... the rule that a felonious intent must exist at the time of the taking and carrying away does not prevent a person receiving from another the bare charge or custody of the latter's property, from being held guilty of larceny when he subsequently forms the felonious intent to and does convert such property  this for the reason that the owner retains constructive possession, from which the taking and to which the trespass occurs, not at the time of the delivery by the owner but at the time of the conversion. [State v. Leicht, 124 N.J. Super. 127, 134 (App.Div. 1973).]
We therefore conclude that the Callahan vehicle was movable stolen property at the time defendant knowingly brought it into *630 the State of New Jersey. Although there is some authority for the proposition that the thief cannot be convicted of receiving stolen property, see 76 C.J.S. § 2, 136 A.L.R. 1087; see also People v. Tatum, 209 Cal. App.2d 179, 25 Cal. Rptr. 832 (1962), this simply means that defendant cannot be convicted as both the thief and receiver, but can be charged with both and convicted of either. The State does not have to prove that the property was stolen by another. See State v. Walkins, 156 Mont. 456, 481 P.2d 689 (1971); see also City of Maumee v. Geiger, 45 Ohio St.2d 238, 344 N.E.2d 133 (S.Ct.Ohio 1976), where a defendant, who admitted actual theft of the property, was convicted for receiving stolen property.
By the amendment to the section of the New Jersey Code of Criminal Justice under which defendant was convicted, it is clear that the Legislature intended to make it a criminal act to knowingly bring into this State movable property of another, knowing that it has been stolen or believing that it is probably stolen, including circumstances where the thief himself brings the stolen property into this State, as defendant did in this case.
Affirmed.
NOTES
[1] Although it was received into evidence, we do not have a copy of the agreement. There is nothing to indicate that defendant paid any consideration so it appears to have been a gratuitous bailment for the sole benefit of defendant.
[2] It appears from this colloquy that defendant was concerned that his defense would be controlled by the appointed lawyer rather than by himself. In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court recognized a defendant's Sixth Amendment right to conduct his own defense. There the Court also held that a trial court may appoint "stand by" counsel to assist the pro se defendant in his defense.
[3] Appointed counsel limited her participation to advice and not control of the defense. See McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).
[4] The public defender should have forwarded the discovery to defendant once the determination was made that he would not be fully represented.
[5] The words "or brings into this State" were not in the New Jersey Code of Criminal Justice as initially adopted. They were added by L. 1979, c. 178.