760 A.2d 1151 (2000)
335 N.J. Super. 52
STATE of New Jersey, Plaintiff,
v.
James BLACKNALL, Defendant.
Superior Court of New Jersey, Law Division (Criminal), Middlesex County.
Decided April 13, 2000.
*1152 Anthony Scarpelli, Assistant Prosecutor, for plaintiff (Glenn Berman, Middlesex County Prosecutor, Attorney).
John W. Hartmann, Princeton, for defendant.
HOFFMAN, P.J.S.C.
The novel issue presented is whether the attorney-client privilege extends to communications made to certain employees of the State Judiciary. Defendant James Blacknall made statements to a representative of the Middlesex County Criminal Division Manager's Bail Unit whose duties included collecting information from the accused to be used in determining whether he was eligible for the services of the Office of the Public Defender (public defender). The specific issue at hand is whether these statements were protected by the attorney-client privilege or by public policy and should thus be excluded from use at trial.

I

STATEMENT OF FACTS
On March 17, 1999, the defendant was babysitting his eleven year-old niece, J.S., and his four year-old nephew, J.C. On that occasion, the State alleges that the defendant digitally penetrated J.S.'s vagina. A complaint was filed on March 22, 1999, charging the defendant with aggravated sexual assault and endangering the welfare of a child. He was arrested on that date and transported to the Middlesex County Adult Correction Center. On the same day, he was read his Miranda rights and signed a card acknowledging that he understood these rights. He then gave a taped statement to the police, in which he denied any type of sexual contact with his niece.
The next day, March 23, 1999, Blacknall was interviewed at the jail by Investigator Jose Torres of the Bail Unit. That unit is part of the Criminal Division Manager's Office of the New Jersey Judiciary. One of Torres' duties was to conduct a routine interview with Blacknall in order to determine whether he was eligible for representation by a public defender. In addition to the usual pedigree information, Investigator Torres elicited standard information about Blacknall's family relationship to the alleged victim. It was at this point that Blacknall allegedly stated that he had not sexually penetrated the alleged victim; rather, he admitted that he had only touched her vagina accidentally.
*1153 Investigator Torres filled out a report on the interview, which he submitted to his supervisor, Andrea Poland, head of the Bail Unit. He also informed her of Blacknall's statement. It is standard procedure in the Bail Unit when dealing with cases involving offenses of a sexual nature to contact the Sex Crimes and Child Abuse Unit of the Prosecutor's Office for a bail recommendation. Therefore, after speaking with Poland, Investigator Torres called Assistant Prosecutor Joseph Rea, who is assigned to the Sex Crimes Unit. During his conversation with Assistant Prosecutor Rea, Investigator Torres reported to him the statements made by Blacknall. Rea then contacted Investigator Alan Bandics of the Sex Crimes Unit. He relayed the information to Bandics and requested that he see Blacknall at the jail to discuss the statement.
Investigator Bandics went to the Middlesex County Correction Center on that day, March 23, and interviewed the defendant. When Blacknall entered the office where the interview was to take place, Investigator Bandics said "I hear you have a problem with the language on your complaint." In response, Blacknall allegedly stated again that he had not penetrated his niece, but had only touched her vagina. The investigator then asked Blacknall to give a taped statement, which Blacknall refused. At this point, the interview was terminated.

II

WHETHER THE ATTORNEY-CLIENT PRIVILEGE EXTENDS TO COMMUNICATIONS TO AN INVESTIGATOR FOR THE BAIL UNIT
Blacknall now moves to suppress his statements to Investigators Torres and Bandics, and all fruits thereof. In support of his motion, the defendant contends that when Investigator Torres interviewed Blacknall at the Middlesex County jail, he effectively was acting as an agent of the Office of the Public Defender. At the core of this argument is that part of the purpose for the interview was to determine whether Blacknall was eligible for the services of a public defender and was thus protected by the attorney-client privilege.
The attorney-client privilege protects communications between an individual and his attorney. The client holds this privilege, and only he can waive it. N.J.S.A. 2A:84A-20; N.J.R.E. 540; See State v. Davis, 116 N.J. 341, 561 A.2d 1082 (1989). In New Jersey, the privilege has been extended to any person who is or may be the agent of either the attorney or the client. State v. Tapia, 113 N.J.Super. 322, 330, 273 A.2d 769 (1971) (citing State v. Kociolek, 23 N.J. 400, 129 A.2d 417 (1957); State v. Loponio, 85 N.J.L. 357, 88 A. 1045 (E. & A.1913)). This includes any "necessary intermediaries ... through whom the communications are made." Davis at 361, 561 A.2d 1082 (quoting Kociolek at 413, 129 A.2d 417). The burden of proof rests with the person asserting the privilege to show that the consultation was a professional one. L.J. v. J.B., 150 N.J.Super. 373, 378, 375 A.2d 1202 (App. Div.1977).
In L.J., the court found that communications to a case supervisor for a county welfare board were not protected by the attorney-client privilege. The court stated that the "plaintiff had not consulted the supervisor as an agent of an already retained attorney or with the purpose of retaining his principal, as an attorney." Id. at 378, 375 A.2d 1202. In Rawlings v. Police Dep't of Jersey City, 133 N.J. 182, 627 A.2d 602 (1993), the New Jersey Supreme Court held that a police officer's communication to his union representative was not protected by the attorney-client privilege. The court concluded that the union representative was not an attorney, and was not acting as a representative of an attorney. Furthermore, the court found that the officer did not communicate with the union representative in the belief that he was an agent for the lawyer who *1154 would handle the officer's case. Id. at 197, 627 A.2d 602.
In the present case, the communications were made, initially, to an employee of the Bail Unit of the Criminal Case Management Division of the State Judiciary. One of the investigator's duties was to assist the defendant in completing the application form to determine eligibility for the services of a public defender. Does this make the investigator, a non-lawyer, an agent of the Office of the Public Defender?
A review of the history of applications for public defender services is helpful. Prior to 1987, the determination of eligibility for representation by a public defender was a function performed within the Office of the Public Defender. A defendant desiring representation by a public defender was required to fill out and sign a form, colloquially referred to as a "5A", so that the public defender could make a determination of eligibility as required by N.J.S.A. 2A:158A-14. State v. Cole, 204 N.J.Super. 618, 625, 499 A.2d 1030 (App.Div.1985). See State v. Cantalupo, 187 N.J.Super. 113, 121, 453 A.2d 913 (App.Div.1982).
In 1987, the New Jersey State Legislature enacted N.J.S.A. 2A:158A-15.1. The new statute shifted the responsibility for investigating the financial status of criminal defendants to determine eligibility for the services of a public defender. That function, previously performed by the Office of the Public Defender, was transferred to the Judiciary, specifically to a designated judge or designated court support office. The law as passed in 1987 called for an initial pilot program, and expired in 1998. An amendment was passed in 1998, however, making the change permanent. Statement of the Assembly Judiciary Committee on A.1995, L.1998, c. 77. Each county's Criminal Division Manager's Office has been designated to conduct this investigation and make the determination of eligibility. Rule 3:22-6.
Investigator Torres testified at a Rule 104(c) hearing held on April 4, 2000. He stated that when interviewing recently jailed inmates charged with indictable offenses, an express part of his duties is to help the inmate complete the application form for the services of a public defender. In fact, the form used by the bail investigators to compile all of the required information, the Uniform Defendant Intake Report (U.D.I.R.) contains the section which comprises the application for the services of a public defender (still colloquially referred to as the "5A" form). Thus, an integral part of his job in interviewing these inmates is to assist them in obtaining representation, should they desire it, from a public defender.
Under State v. Davis, supra, 116 N.J. at 361, 561 A.2d 1082, the privilege extends to "any necessary intermediaries to whom the communications are made." This court could simply rule that the bail investigator, by virtue of his function as the initial collector of information to determine eligibility for the services of a public defender, is such a necessary intermediary, and thus that the privilege should apply to statements made to him. However, there are underlying policy issues which should first be addressed.
The Sixth Amendment to the United States Constitution gives all criminal defendants the right to be assisted by counsel. U.S. CONST. amend. VI. This right is made obligatory to the individual States by the Fourteenth Amendment. Gideon v. Wainwright, 372 U.S. 335, 342-44, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). See U.S. CONST. amend. XIV. In New Jersey, if a criminal defendant is faced with a "`consequence of magnitude,' e.g., imprisonment or loss of driving privilege, and is indigent, a court must provide him with an assigned attorney." State v. Gale, 226 N.J.Super. 699, 703, 545 A.2d 279 (Law Div.1988) (citing Rodriguez v. Rosenblatt, 58 N.J. 281, 277 A.2d 216 (1971)).
In cases, therefore, where the defendant faces possible imprisonment or another consequence of magnitude, such as in the present case, the very beginning of the *1155 criminal process, once the accused is incarcerated, is the 5A reviewthe determination of the accused's eligibility for representation by a public defender. In order for this review to take place and for the system to run effectively, there must be open communication between the accused and the investigator collecting the information in order for the U.D.I.R. to be completed and a determination to be made. Should the statements made by the accused to this investigator not be protected by the privilege, the effect would be to seriously chill the communications between the defendant and the Bail Unit. Conceivably, the presence of an attorney would be required at each such interview. This could potentially create an enormous logjam in the criminal justice system. In fact, since the interview is to determine eligibility for a public defender, a "catch-22" situation could clearly arise.
The right to representation in a criminal matter is fundamental. The chilling of the process of applying for a public defender would have a negative impact on this right. Accordingly, I find that the investigator for the bail unit, by virtue of his role in the 5A application process, is a "necessary intermediary" within the meaning of State v. Davis, supra, 116 N.J. at 361, 561 A.2d 1082. I conclude, therefore, that Blacknall's statements to Investigator Torres were covered under the attorney-client privilege.

III

WHETHER THE DISCLOSURE OF THE DEFENDANT'S STATEMENTS TO THE PROSECUTOR'S OFFICE BY THE BAIL UNIT CONSTITUTED A WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE, THUS PRECLUDING DEFENDANT FROM RAISING THE PRIVILEGE.
The next issue is whether, given the fact that the defendant's statements to Investigator Torres were protected by the privilege, the privilege was nonetheless waived by Investigator Torres' report to his supervisor, and then to the Middlesex County Prosecutor's Office. As discussed above, the attorney-client privilege is held by the client, and not by the attorney (nor by the attorney's agent or intermediary). See, e.g., N.J.S.A. 2A:84A-20; N.J.R.E. 540; State v. Davis, 116 N.J. 341, 561 A.2d 1082 (1989).
An inadvertent release of privileged information has been held in New Jersey not to constitute a waiver of the psychiatrist-patient privilege. State v. J.G., 261 N.J.Super. 409, 420-21, 619 A.2d 232 (App. Div.1993). In Trilogy Communications, Inc. v. Excom Realty, Inc., 279 N.J.Super. 442, 652 A.2d 1273 (Law Div.1994), the court stated that "[i]nadvertent disclosure through mere negligence or misfortune should not be deemed to abrogate the lawyer-client privilege." Id. at 445, 652 A.2d 1273 (citing J.G., supra). See generally, State v. Davis, 116 N.J. 341, 362-63, 561 A.2d 1082 (1989); State v. Loponio, 85 N.J.L. 357, 88 A. 1045 (E. & A.1913); State v. Tapia, 113 N.J.Super. 322, 273 A.2d 769 (App.Div.1971). In the present case, I find that Investigator Torres' revelation to Assistant Prosecutor Rea of the statements made by Blacknall were inadvertent in that he was not aware that the statements were privileged. Accordingly, all fruits of those statements shall be suppressed.
The defense should submit the appropriate order.