19 A.3d 1032 (2011)
420 N.J. Super. 182
In the Matter of Subpoena Duces Tecum on CUSTODIAN OF RECORDS, CRIMINAL DIVISION MANAGER, Morris County.
No. A-0924-10T3.
Superior Court of New Jersey, Appellate Division.
Argued March 22, 2011.
Decided May 31, 2011.
*1033 Mark G. Eliades, Supervising Deputy Attorney General, argued the cause for appellant State of New Jersey (Paula T. Dow, Attorney General, attorney; Mr. Eliades, of counsel and on the brief; Paul Salvatoriello, Deputy Attorney General, on the brief).
John J. McMahon, Chief Trial Attorney, argued the cause for respondent Alphonso Cataldo (Yvonne Smith Segars, Public Defender, attorney; Mr. McMahon, of counsel and on the brief).
Before Judges PARRILLO, YANNOTTI and SKILLMAN.
The opinion of the court was delivered by
SKILLMAN, J.A.D. (retired and temporarily assigned on recall).
The issue presented by this appeal is whether a defendant's application for representation by the Public Defender and the factual materials submitted in support of that application are protected by the attorney-client privilege. We conclude that under the circumstances of this case, where defendant's application for representation by the Public Defender and supporting materials may contain information the State could use against him in the prosecution of the charges for which he sought such representation, defendant may invoke the attorney-client privilege.

I.
A State grand jury indicted defendant and thirty-three other persons for racketeering, in violation of N.J.S.A. 2C:41-2(c) and (d); falsifying records, in violation of N.J.S.A. 2C:21-4; failure to file tax returns, in violation of N.J.S.A. 54:52-8; failure to pay gross income taxes, in violation of N.J.S.A. 54:52-9; money laundering, in violation of N.J.S.A. 2C:21-25, involving property valued in excess of $500,000; and numerous other offenses.
Defendant applied for representation by the Public Defender and was interviewed in connection with that application by an employee of the Superior Court, Criminal Division Manager's Office, Morris County. Defendant's application was subsequently approved by that Office as provided by N.J.S.A. 2A:158A-15.1 and Rule 3:8-3. See State v. Blacknall, 335 N.J.Super. 52, 57, 760 A.2d 1151 (Law Div.2000).
Thereafter, the Attorney General's Office served a trial subpoena upon the custodian of records in the Criminal Division Manager's Office for the production of:
All applications [including but not limited to 5A forms], writings, financial investigation reports and/or notes, mortgage records, financial documents reflecting assets or indebtedness, promissory notes or written obligations/guarantees for the provision of services of the Public Defender, as well as any other document, writing or item compiled pursuant to the inquiry made under the authority of N.J.S.A. 2A:158A-15.1, as well as the consideration of the requirements in N.J.S.A. 2A:158A-14, attributable to defendant Thomas [sic] Cataldo, in connection with State Grand Jury Indictment 10-05-00057-S.
The trial court issued an order quashing this subpoena. In its statement of reasons supporting this order, the court stated:
[Defendant] is currently being represented by a public defender, and the State is seeking information related to his representation in this on-going case.
... [E]ven initial conversations with an attorney the client seeks to hire are protected under the [attorney-client] privilege.
*1034 The court concluded its statement of reasons by stating: "[T]he State's motive in obtaining [these] documents is unclear." The order quashing the subpoena was made "without prejudice."
The trial court also denied the State's motion for reconsideration. In its statement of reasons in support of this denial, the court distinguished the cases relied upon by the State as involving situations "in which representation by the Office of the Public Defender [had] ceased" when the State subpoenaed a defendant's application for representation by the Public Defender, and reaffirmed its conclusion that "the attorney-client privilege extends to any statement [by the defendant], written or oral, including financial information disclosed in the `5A' intake form."
We granted the State's motion for leave to appeal the order quashing the Attorney General's subpoena of the documents defendant submitted in support of his application for representation by the Public Defender and denying reconsideration.

II.
The attorney-client privilege, which is codified at N.J.S.A. 2A:84A-20 and appears in N.J.R.E. 504, provides that "communications between lawyer and his client in the course of that relationship and in professional confidence, are privileged." A "client" entitled to the protection of the attorney-client privilege includes "a person... that ... consults a lawyer or the lawyer's representative for the purpose of retaining the lawyer." N.J.R.E. 504(3)(a). Thus, "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39, 51 (1976). Furthermore, such confidential disclosures may be made not only directly to the attorney but also through "necessary intermediaries and agents." State v. Davis, 116 N.J. 341, 361, 561 A.2d 1082 (1989) (quoting State v. Kociolek, 23 N.J. 400, 413, 129 A.2d 417 (1957)).
"It is also beyond question that indigent, needy or otherwise eligible clients, assisted by attorneys without fees, are entitled to the same protections as clients who retain private counsel." In re Advisory Op. No. 544 of N.J. Supreme Court Advisory Comm. on Prof'l Ethics, 103 N.J. 399, 404, 511 A.2d 609 (1986); see N.J.S.A. 2A:158A-12 (specifically recognizing applicability of attorney-client privilege to communications between an "individual defendant and any person in or engaged by the Office of the Public Defender ... to the same extent and degree as though counsel has been privately engaged").
However, the attorney-client privilege "is not absolute." Fellerman v. Bradley, 99 N.J. 493, 502, 493 A.2d 1239 (1985). "Like all evidentiary privileges, the attorney-client privilege ... can conflict with other important policies of our judicial system." Ibid. Therefore, confidential disclosures by a client, such as the client's identity or address, may be protected by the attorney-client privilege under some but not under other circumstances. See In re Nackson, 114 N.J. 527, 532-39, 555 A.2d 1101 (1989); In re Advisory Op. No. 544, supra, 103 N.J. at 409-12, 511 A.2d 609; Fellerman, supra, 99 N.J. at 499-502, 506-07, 493 A.2d 1239. The determination whether a communication between a client and an attorney is protected must be made "on the basis of the purposes for which the privilege exists and the reasons for its assertion in the context of the particular case." Fellerman, supra, 99 N.J. at 502, 493 A.2d 1239.
The trial court correctly applied these principles in quashing the Attorney General's subpoena of defendant's application *1035 for representation by the Public Defender and the written materials submitted in support of that application, including financial documents reflecting assets and liabilities. Defendant is charged with offenses that directly relate to his financial condition and dealings, including failure to file tax returns, failure to pay gross income taxes, and money laundering. Thus, the materials sought by the Attorney General's subpoena could very well include documents or other materials that would be useful to the State in prosecuting the pending charges against defendant. If any of those materials would not be discoverable by the State under Rule 3:13-3(d), their production in response to the Attorney General's subpoena would place defendant in a position where his confidential disclosures to obtain representation by an attorney could be used against him in the very proceeding in which he sought representation. This would violate one of the basic purposes of the attorney-client privilege, which is to allow a person to seek legal representation without suffering any detrimental consequences. See Fellerman, supra, 99 N.J. at 498-99, 493 A.2d 1239.
Furthermore, the reason defendant submitted the materials the Attorney General sought to subpoena was to obtain representation by the Public Defender. Consequently, defendant would be subject to the potential use of those materials in the pending criminal proceedings against him solely because of his putative indigency. This would be contrary to the principle that indigent clients who seek representation at public expense are entitled to the same degree of protection under the attorney-client privilege as non-indigent clients who seek to retain private counsel. See N.J.S.A. 2A:158A-12; In re Advisory Op. No. 544, supra, 103 N.J. at 404, 511 A.2d 609.
Our Supreme Court has recognized the protected nature of the information a defendant submits to secure representation by the Public Defender. Administrative Directive 1-06, issued by the Administrative Director of the Courts, adopts a revised "Uniform Defendant Reporting System" for various purposes, including the determination of a defendant's indigency. This directive reaffirms the Supreme Court's policy, expressed in a prior administrative directive, that "information on the intake form may not be used in grand jury proceedings or at trial, even for purposes of cross-examination." However, it is unclear whether this limitation on the use of information contained in the "intake form" would extend to any documents submitted in support of a claim of indigency. Moreover, even if the directive would be so construed, this would not prevent the State from using information contained in the intake sheet and supporting documents to discover other admissible evidence. Therefore, even though Administrative Directive 1-06 supports our conclusion that information a defendant submits in support of an application for representation by the Public Defender is protected by the attorney-client privilege, the protection provided by the privilege is broader because it prohibits not only direct use of that information but also the prosecutor's discovery of that information. See Graham v. Gielchinsky, 126 N.J. 361, 366, 599 A.2d 149 (1991).
Our conclusion that a defendant's communication of information to the Criminal Division Manager's Office to obtain representation by the Public Defender is protected by the attorney-client privilege is also supported by Blacknall, supra, 335 N.J.Super. 52, 760 A.2d 1151. In that case, the defendant was interviewed by a representative of the Criminal Division Manager's Office to determine his eligibility for representation by the Public Defender. *1036 Id. at 54, 760 A.2d 1151. During that interview, defendant denied commission of the aggravated sexual assault with which he was charged, but admitted acts that would constitute the lesser offense of sexual assault. Ibid. The court concluded that this admission was protected by the attorney-client privilege because the representative of the Criminal Division Manager's Office to whom it was made was acting as an intermediary of the Public Defender's Office in determining defendant's eligibility for representation. In reaching this conclusion, the court stated:
[T]he very beginning of the criminal process ... is the 5A reviewthe determination of the accused's eligibility for representation by a public defender. In order for this review to take place and for the system to run effectively, there must be open communication between the accused and the investigator collecting the information in order for the [intake report] to be completed and a determination to be made.
The right to representation in a criminal matter is fundamental. The chilling of the process of applying for a public defender would have a negative impact on this right. Accordingly, I find that the investigator for the bail unit, by virtue of his role in the 5A application process, is a "necessary intermediary" within the meaning of State v. Davis, supra, 116 N.J. at 361, 561 A.2d 1082. [Id. at 58, 760 A.2d 1151.]
We reach the same conclusion in this case. Although the Attorney General's subpoena was directed at the written application and supporting materials defendant submitted to the Criminal Division Manager's Office to obtain Public Defender representation, rather than, as in Blacknall, statements the defendant made to a representative of that office, the same policies underlying protection of client communications to obtain legal representation, which the court found controlling in Blacknall, also apply in this case.
Our conclusion that the defendant's application for representation by the Public Defender and the documents submitted in support of that application are protected by the attorney-client privilege is also supported by the Supreme Court of California's decision in People v. Canfield, 12 Cal.3d 699, 117 Cal.Rptr. 81, 527 P.2d 633 (Cal.1974), in which the Court reversed a conviction for auto theft based on the trial court's admission into evidence of the defendant's application for representation by the Public Defender, which failed to list the automobile the defendant was charged with stealing as an asset. In concluding that this statement was protected by the attorney-client privilege, the Court stated:
It is clear from the circumstances under which the statement was given that it was given in confidence ... and that defendant's purpose was to retain the public defender to represent him in the criminal proceedings against him. Under [the attorney-client privilege], therefore, any disclosures made by defendant in the course of the interview were privileged and could not be revealed without his consent.
. . . .
... The problem [of disclosure of confidential communications to obtain legal representation] is particularly serious with respect to indigents represented by the public defender, there apparently being a tendency on the part of many such defendants to regard the public defender as an arm of the state working closely with the prosecutor.
. . . .
... [E]ven if it were held that the court could require the public defender to turn over to it a financial eligibility statement given by a defendant, the sole use which *1037 the court could make of the statement would be to enable it to determine whether the defendant was eligible for the services of the public defender and not, as here, to turn the statement over to the People to use in the prosecution of the case in chief against the defendant.
[Id., 117 Cal.Rptr. 81, 527 P.2d at 636-38.]
The circumstances in Blacknall, Canfield, and this case, in which there is a risk the State could use information a defendant submitted to secure representation by the Public Defender in the prosecution of the charges for which he sought that representation, are distinguishable from In re Grand Jury Subpoena Duces Tecum Served upon Levy, 165 N.J.Super. 211, 397 A.2d 1132 (Law Div.1978), aff'd o.b., 171 N.J.Super. 475, 410 A.2d 63 (App.Div. 1979), in which the court held that the attorney-client privilege does not protect disclosure, in response to a subpoena by a grand jury investigating whether non-indigents were fraudulently obtaining representation by the Public Defender, of information a defendant who had already been convicted and sentenced submitted to obtain representation by the Public Defender. In reaching this conclusion, the court stated: "[T]he attorney-client privilege does not protect communications concerning misconduct, criminal activity, or fraudulent acts in which the client is presently engaging." Id. at 216, 397 A.2d 1132. The court also observed that the information sought by the subpoena did not "in any manner touch upon the charges made against defendant." Id. at 217, 397 A.2d 1132.
Even though the information sought by the subpoena in Levy related to a defendant who had already been convicted and sentenced, we stated, in affirming the Law Division's denial of the motion to quash the subpoena, that "in the event the Public Defender should claim that one or more of the documents referred to in the said subpoena are protected from disclosure by the attorney-client privilege, he is at liberty to apply to the trial court for an order directing that the documents be submitted for an in camera inspection by the court and determination whether they constitute privileged material." 171 N.J.Super. at 477, 410 A.2d 63. Our opinion thus recognized that even in circumstances where disclosure of a client's submission in support of an application for representation by the Public Defender may be warranted, the right to assert the attorney-client privilege should be preserved.
Levy was decided before our Supreme Court's decisions in Fellerman, supra, 99 N.J. at 498-507, 493 A.2d 1239, and Nackson, supra, 114 N.J. at 531-39, 555 A.2d 1101, which hold that trial courts have a responsibility to carefully balance the competing policies underlying the attorney-client privilege and the exceptions to that privilege, including the "crime or fraud" exception. If defendant's application for representation by the Public Defender was indeed fraudulent, it would be subject to disclosure under the crime or fraud exception. See Levy, supra, 165 N.J.Super. at 216, 397 A.2d 1132. However, because defendant is charged with offenses that directly relate to his personal finances, including failure to pay taxes and money laundering, the disclosure of defendant's application for representation by the Public Defender and the materials submitted in support of that application could provide the State with evidence that would be used against him in the trial of those pending charges. Such use would deter a person in the position of defendant from seeking representation by the Public Defender and conflict with one of the basic purposes of the attorney-client privilege, which is to *1038 allow a person to seek legal representation without suffering any detrimental consequences. See Fellerman, supra, 99 N.J. at 498-99, 493 A.2d 1239. Moreover, we cannot simply assume based on the Attorney General's allegations that defendant's application for representation by the Public Defender was fraudulent. See Clark v. United States, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993, 1000 (1933). Therefore, the trial court correctly concluded that defendant's application for representation by the Public Defender is currently protected by the attorney-client privilege.
Finally, we note that the order quashing the Attorney General's subpoena is "without prejudice" to a more narrowly drawn application by the Attorney General that "specif[ies] the nature of the information sought, along with the reasons, such that [the] Court may be able to grant a narrowly-tailored subpoena, thus avoiding any violation of the attorney-client privilege." However, the Attorney General declined to avail herself of this opportunity. Instead, she brought this appeal on the theory that a defendant's disclosure of financial information in an application for representation by the Public Defender is not entitled to any protection whatever under the attorney-client privilege. In rejecting this argument, we do not preclude the Attorney General from applying to the trial court for the "narrowly-tailored subpoena" allowed by its June 30, 2010 order. We also of course do not preclude issuance of the type of grand jury subpoena involved in Levy once the trial of the charges against defendant has been completed.
Affirmed.