*Opposed*—None.

68 A.3d 308

IN THE MATTER OF SUBPOENA DUCES TECUM ON CUSTODIAN OF RECORDS, CRIMINAL DIVISION MANAGER, MORRIS COUNTY.

Argued October 11, 2012—Decided May 14, 2013.

150

*Mark G. Eliades,* Supervising Deputy Attorney General, argued the cause for appellant State of New Jersey (*Jeffrey S. Chiesa,* Attorney General, attorney; *Mr. Eliades* and *Paul Salvatoriello,* Deputy Attorney General, on the briefs).

*John J. McMahon,* Chief Trial Attorney, argued the cause for respondent *Alphonso Cataldo* (*Joseph E. Krakora,* Public Defender, attorney).

PER CURIAM.

Through the Office of the Public Defender, the taxpayers of this State provide legal representation to criminal defendants who cannot afford a lawyer. The Legislature affords this publicly funded service only to individuals who lack the resources to hire private counsel. *See N.J.S.A.* 2A:158A–14. To determine whether a defendant qualifies for a public defender, a court staff member collects information about a defendant's financial status. That information is then collected on the third page of an intake form, known as the Uniform Defendant Intake Report (UDIR). The defendant must certify the accuracy of the financial data set forth on the form.

This case requires the Court to consider the confidentiality of a criminal defendant's UDIR form in light of an allegation that financial information set forth on the form was false. Defendant Alfonso Cataldo, indicted for financial crimes, obtained the services of a public defender after executing a UDIR form. The State presented evidence about defendant's finances that challenged the accuracy of defendant's representations about his assets on the disclosure form. It issued a trial subpoena seeking, among other information, defendant's UDIR form and other financial data provided to court staff for purposes of determining defendant's indigency. Although it used a trial subpoena, the State represented that it would not use the information it obtained

in defendant's pending trial. Rather, the State sought this information to determine whether to initiate a second prosecution against defendant to charge him with false swearing and/or fraud. The trial court quashed the State's subpoena on attorney-client privilege grounds, and the Appellate Division affirmed.

We modify and affirm the Appellate Division's determination. We recognize that the financial information sought is integral to the State's responsibility to investigate an alleged misappropriation of publicly funded legal services. Nonetheless, defendant supplied his financial information after being advised in writing that his UDIR form would be used for the sole purpose of determining indigency, with the understanding that his disclosures would remain confidential. Administrative Directive 1–06, promulgated by the Administrative Office of the Courts (AOC) at our instruction, specifically represented to defendant that the UDIR form would not be used at trial or in a grand jury investigation. Accordingly, we hold that although the UDIR form is relevant to the State's investigation of defendant for false swearing and fraud, the trial court properly quashed the State's trial subpoena seeking defendant's UDIR form to prosecute him. Given the language of the Directive, we do not determine whether defendant's UDIR form was subject to the attorney-client privilege.

We are also mindful that, in addition to the specific issue raised in this appeal, this Court has other concerns when an allegation is made that a criminal defendant has willfully misrepresented his or her financial status in order to obtain legal representation at public expense. The judiciary has an independent responsibility to insure that funds set aside for qualifying criminal defendants are not misappropriated by those who do not qualify but provide false information to obtain a public defender. *See N.J.S.A.* 2A:158A–15.1. For that reason, we refer the question of defendant's qualification for indigency status to the Assignment Judge for review. The Assignment Judge can rely on any relevant, competent evidence provided by any person or entity to determine whether defendant qualifies for a public defender.

We further hold that while the current Directive serves the valuable purpose of protecting disclosure of sensitive, confidential information, it improperly prevents the State from prosecuting defendants who submit false financial information to secure the legal services of the Public Defender. We thus modify the Directive to permit, in appropriate circumstances, the disclosure of defendant's financial information set forth on the third page of the UDIR form. The State can obtain that information through a valid grand jury subpoena—not through a trial subpoena, as was done here. Our decision today facilitates the State's ability to prosecute false swearing and fraud in the submission of financial disclosures to obtain public defender representation. It also ensures that a defendant's non-financial personal information, such as the medical, mental health, and substance abuse history that is also submitted to the Superior Court on the UDIR form, will remain confidential.

I.

On May 14, 2010, a State grand jury indicted defendant Alfonso Cataldo and thirty-three others. The indictment alleged that the defendants conspired together as the "Lucchese" family and as the "Nine–Trey Gangster Bloods" to commit various criminal offenses. The grand jury accused defendant of "engaging in and or conspiring to commit repeated acts of promoting gambling, possession of gambling records, theft by extortion, aggravated assault, possession of a weapon for an unlawful purpose, theft by deception, falsifying records, failure to pay gross income tax, and money laundering." Defendant was indicted on six counts: first-degree racketeering, *N.J.S.A.* 2C:41–2; first-degree and second-degree conspiracy, *N.J.S.A.* 2C:5–2; third-degree promoting gambling, *N.J.S.A.* 2C:37–2; third-degree possession of gambling records, *N.J.S.A.* 2C:37–3(a); and first-degree money laundering, *N.J.S.A.* 2C:21–25.

Prior to arraignment, defendant sought and obtained representation by counsel from the Office of the Public Defender. Defen-

dant's application for public defender representation included a UDIR form. Although the record does not include defendant's executed UDIR form or indicate the precise manner by which the form was prepared, the UDIR form required defendant to certify, under penalty of law, that the information he provided was truthful. Court personnel reviewed defendant's UDIR form. Evidently determining that defendant qualified as indigent, the Criminal Division granted his application for public defender representation.

Defendant's claim of indigency generated a skeptical response from the State. Prosecutors had obtained documents during their investigation that suggested defendant owned substantial assets. The State issued a trial subpoena to the Morris County Superior Court's custodian of records, demanding the production of a broad range of documents:

> [a]ll applications [including but not limited to 5A forms], writings, financial investigation reports and/or notes, mortgage records, financial documents reflecting assets or indebtedness, promissory notes or written obligations/guarantees for the provision of services of the Public Defender, as well as any other document, writing or item compiled pursuant to the inquiry made under the authority of *N.J.S.A.* 2A:158A–15.1, as well as the consideration of the requirements in *N.J.S.A.* 2A:158A–14, attributable to defendant [Alfonso] Cataldo, in connection with State Grand Jury Indictment 10–05–00057–S.

The subpoena specifically provided that the documents were to be produced "in connection with" defendant's indictment. The State has consistently represented, however, that it did not intend to use defendant's UDIR form at his pending trial, but instead to determine whether it should seek to separately indict defendant for making intentional false statements to fraudulently obtain counsel at public expense. At oral argument, the State suggested that it also sought defendant's UDIR form to determine whether to ask the judge to remove defendant's public defender attorney.

Although defendant did not object to the production of the documents, the trial court quashed the subpoena on its own motion. The court relied on *State v. Blacknall,* 335 *N.J.Super.* 52, 760 *A.*2d 1151 (Law Div.2000), to find that the attorney-client privilege prevents disclosure of statements made to court support

staff as part of the intake form interview. It acknowledged that the attorney-client privilege would not shield information given in furtherance of a crime or fraud. It thus left open the possibility that the State could craft a narrower subpoena seeking documents only for the purpose of investigating a potential crime or fraud.

The State moved for reconsideration. It asserted that the attorney-client privilege did not prevent disclosure of defendant's UDIR form, and suggested that the trial court "may wish" to conduct an in camera review of the documents. In the alternative, the State proffered that it sought the documents to investigate whether defendant fraudulently represented his assets to obtain public defender representation.

The State presented an affidavit from Detective Noelle Hall, which outlined the State's proofs regarding defendant's income and included as attachments several documents relating to defendant's assets. One attachment identified a Florham Park property, jointly owned by defendant and his wife, Lorraine Cataldo, that was assessed in 2010 at $659,600. That property was mortgaged by defendant and his wife in 2003 at $160,000, and they secured a $100,000 home equity line of credit on the property the following year. Another attachment indicated that in 2004, defendant individually obtained a $750,000 mortgage on a property in Readington and that he paid substantial mortgage payments on that property from July 2007 to June 2010. The State also presented proof that defendant's wife owned a second Florham Park property assessed at $484,300. According to Detective Hall, in 2000, defendant and his wife transferred the property from joint ownership to sole ownership in Lorraine's name for one dollar. In its motion for reconsideration, the State further represented that defendant had leased a 2010 Honda Accord and that it was in the process of obtaining the lease agreement. Before this Court, the State has supplemented the record with the vehicle lease agreement, dated December 18, 2009, in which defendant represented that he worked as a contractor for Cataldo Construction and that his monthly income was $10,500.

The trial court denied the State's motion for reconsideration. It reaffirmed its view that the attorney-client privilege protected disclosure of defendant's financial information.

An Appellate Division panel granted the State's motion for leave to appeal and unanimously affirmed the trial court's decision. *In re Subpoena Duces Tecum on Custodian of Records*, 420 *N.J.Super.* 182, 19 *A.*3d 1032 (App.Div.2011) [hereinafter *In re Subpoena* ]. Relying on *Blacknall, supra,* and the California Supreme Court's decision in *People v. Canfield,* 12 *Cal.*3d 699, 117 *Cal.Rptr.* 81, 527 *P.*2d 633 (1974), and distinguishing the Law Division's holding in *In re Grand Jury Subpoena Duces Tecum Served Upon Levy,* 165 *N.J.Super.* 211, 397 *A.*2d 1132 (Law Div.1978), *aff'd o.b.,* 171 *N.J.Super.* 475, 410 *A.*2d 63 (App.Div.1979), the Appellate Division panel held that the attorney-client privilege protected the information sought. *In re Subpoena, supra,* 420 *N.J.Super.* at 189–92, 19 *A.*3d 1032. The panel reasoned that because that information "could very well . . . be useful to the State in prosecuting the pending charges against defendant," the discovery would violate a central purpose of the attorney-client privilege: to "allow a person to seek representation without suffering any detrimental consequences." *Id.* at 187, 19 *A.*3d 1032.

The Appellate Division panel also expressed concern that production of the UDIR form would expose defendant to disclosure of sensitive information "solely because of his putative indigency," contrary to *N.J.S.A.* 2A:158A–12's admonition that defendants who seek public defender representation "are entitled to the same degree of protection under the attorney-client privilege as nonindigent clients who seek to retain private counsel." *In re Subpoena, supra,* 420 *N.J.Super.* at 188, 19 *A.*3d 1032. The panel further declined the State's invitation to apply the crime-fraud exception because the State could not prove that defendant's application was fraudulent. *Id.* at 192, 19 *A.*3d 1032. Like the trial judge, the panel left open the possibility that the State could serve a narrower subpoena that would not impinge upon the attorney-client privilege and suggested that a subpoena for defen-

dant's UDIR form would be proper "once the trial of the charges against defendant has been completed." *Ibid.* It also invoked Administrative Directive 1–06 but declined to rely on the Directive because of its view that the attorney-client privilege broadly prohibited the discovery of the information as well as its use. *Id.* at 188, 19 *A.*3d 1032.

We granted the State's motion for leave to appeal. 208 *N.J.* 364, 29 *A.*3d 739 (2011).

## II.

The State argues that because it seeks defendant's UDIR form solely to determine whether to prosecute him for fraud—not as evidence in his current criminal matter—the Appellate Division panel's concerns about the use of intake form information in a pending prosecution are unfounded. The State suggests that the attorney-client privilege should not apply to financial disclosures made to secure public defender representation. It compares the information sought here to records that document the source of an attorney's fees, which federal courts have held are not "confidential communications" that fall within the attorney-client privilege. The State further argues that the attorney-client privilege does not govern UDIR forms because they are regularly distributed to prosecutors at sentencing hearings. It contends that even if the attorney-client privilege were to apply, disclosure would be warranted under the crime-fraud exception to the privilege. The State argues that the Appellate Division panel's categorical bar on the disclosure of financial information submitted on the intake form fails to account for the proper balancing of the interests at stake. It urges the Court to follow federal and state authority balancing Fifth and Sixth Amendment rights against the government's interest in preventing fraud on the Public Defender, and to reconcile the competing interests at stake by an adversarial proceeding or by in camera review.

Defendant urges the Court to uphold the Appellate Division's finding that the attorney-client privilege prevents disclosure of his

intake form. He argues that the criminal case management investigator to whom the form was submitted is a "necessary intermediary" between defendant and his public defender attorney, thus rendering defendant's statements to the investigator privileged. Defendant further asserts that the crime-fraud exception to the privilege does not apply because the State cannot prove that defendant committed fraud without using the privileged documents. Defendant also relies on Administrative Directive 1–06, which specifically prohibits use of a defendant's intake form at trial or in a grand jury proceeding.

## III.

The State's trial subpoena, and defendant's objections to the discovery sought, require that we consider the history, purpose, and judicial treatment of the UDIR form and public defender applications. Our State has a long history of publicly funded representation of indigent defendants. *See* Arnold S. Trebach, *The Indigent Defendant*, 11 *Rutgers L.Rev.* 625, 629 (1957) ("The laws of New Jersey recognized the obligation to provide counsel for the indigent defendant from the earliest days of statehood."). We have recognized that the State and Federal Constitutions guarantee a criminal defendant the right to legal representation. *See U.S. Const.* amend. VI; *N.J. Const.* art. I, ¶ 10; *State v. Horton*, 34 *N.J.* 518, 522, 170 *A.*2d 1 (1961).

In 1967, to ensure that the State fulfilled its constitutional obligation to provide legal services for indigent defendants, the Legislature created the Office of the Public Defender. *See L.* 1967, *c.* 43 (codified at *N.J.S.A.* 2A:158A–1 to –25). The statute provides:

> It is hereby declared to be the policy of this State to provide for the realization of the constitutional guarantees of counsel in criminal cases for indigent defendants . . . to the end that no innocent person shall be convicted, and that the guilty, when convicted, shall be convicted only after a fair trial according to the due process of the law.

[*N.J.S.A.* 2A:158A–1.]

The Public Defender represents all indigent defendants charged with an indictable offense. *N.J.S.A.* 2A:158A–5. The statute defines an indigent defendant as one "who does not have the present financial ability to secure competent legal representation." *N.J.S.A.* 2A:158A–2.

At the defendant's first court hearing, the judge advises the defendant of his right to request representation by a public defender. *R.* 3:4–2(b)(3). When a defendant accused of an indictable offense asserts indigence, the court instructs him or her to complete an application for a public defender. *R.* 3:4–2(b)(5). The Legislature delineated several factors by which the judiciary determines whether a defendant has the financial capacity to employ private counsel. *N.J.S.A.* 2A:158A–14.[1] This Court's rules charge each vicinage's criminal division manager's office with receiving public defender applications and assessing indigency. *R.* 3:4–2(b)(5), 3:8–3.

The public defender application is a component of the UDIR, which in turn is part of the Uniform Defendant Reporting System adopted statewide by the AOC in 1992. The system replaced a variety of forms that judges and court staff previously used to assess indigency, set bail, determine eligibility for pretrial intervention, and impose sentences.

A defendant charged with an indictable offense completes the UDIR form prior to arraignment. Although the process varies by county, the UDIR form is typically filled out in consultation between a defendant and a Criminal Division staff member. The four-page form collects general personal data, such as name, address, social security number, date of birth, and marital status. It contains other background information on the defendant's fami-

---

[1] Although the previous version of the public defender statute granted the Office of the Public Defender exclusive authority to determine indigency, *see State v. Nilsen,* 214 *N.J.Super.* 23, 26, 518 A.2d 240 (App.Div.1986), the current statute provides that the judiciary makes that determination, *N.J.S.A.* 2A:158A–15.1. *See generally Blacknall, supra,* 335 *N.J.Super.* at 56–57, 760 A.2d 1151 (reviewing history of public defender applications).

ly, military service, and education. The form also compiles potentially sensitive information about a defendant's past and present physical condition, mental health, and drug and alcohol use and treatment.

On the third page of the UDIR form, known as the 5A Form, the defendant provides employment and financial information and indicates whether he or she requests representation by a public defender.[2] All defendants must sign the form to affirm that their statements about their financial status are true. But the form requires an additional representation from defendants seeking the services of a public defender:

> If I have indicated above that I wish to be represented by a public defender, I am submitting this Financial Statement in support of my application to establish indigency, and I am aware that if any statements made by me in the Financial Statement are willfully false, I am subject to punishment as provided by *R.* 1:4-4(b).

Under *Rule* 1:4-4(b), a certification of this kind serves as a substitute for an oath. A person who submits a willfully false statement under a signed certification of this form is subject to prosecution for false swearing. *See State v. Feaster*, 184 *N.J.* 235, 258 n. 9, 877 *A.2d* 229 (2005) (citations omitted). Thus, a defendant who prepares a UDIR form is made aware of legal penalties that may be imposed if false information is submitted in order to obtain the services of a public defender.

Questions about the confidentiality of the UDIR form arose soon after it was adopted as a method of determining indigency. In *State v. Shahamet*, 228 *N.J.Super.* 340, 344-45, 549 *A.2d* 884 (App.Div.1988), an Appellate Division panel held that unless a statute or court rule provided otherwise, a prosecutor could impeach a witness with statements that the witness had made on a UDIR form after her arrest. Following that decision, the Su-

---

[2] If the Criminal Division manager's office determines that a defendant seeking the services of a public defender is indigent, he or she is referred to the Office of the Public Defender no later than the pre-arraignment conference. *R.* 3:8-3, 3:9-1(a).

preme Court Criminal Practice Committee expressed "concern[ ] about use of information supplied by a defendant concerning drug/alcohol use and mental/physical health in response to questions which are contained on the UDIR." *1990 Report of Supreme Court Committee on Criminal Practice, N.J.L.J.,* at 414 (Feb. 15, 1990). Although a majority of Criminal Presiding Judges recommended that the UDIR form should be strictly protected from disclosure, the Committee voted against a rule keeping the entire form confidential. *Ibid.* It also proposed to transfer questions about drug and alcohol use and mental and physical health from the UDIR form to the pretrial intervention form, a document that is completed by defendants with the assistance of counsel and remains confidential. *Ibid.*

In its January 14, 1991 Rules Conference, this Court accepted the Criminal Presiding Judges' recommendation. Consequently, the AOC promulgated Administrative Directive 7–91, requiring statewide use of the UDIR form. However, given the retention of sensitive information on the UDIR form, the Directive strictly limited the use of the information on the form:

(1) information contained on the intake form can be used by the court without restriction for the purposes of the setting of bail, appointment of counsel and pretrial intervention; (2) the information on the intake form is prohibited from use in grand jury proceedings and at trial, even for the purposes of cross-examination; and (3) information contained on the intake form may be used at sentencing unless the defendant objects. Should the defendant object, the information cannot be used over his or her objection.

In 2006, the AOC promulgated Administrative Directive 1–06, which superseded Directive 7–91. The new directive updated the forms and adapted them for computer-based use but left unchanged all of the substantive information collected on the UDIR. Directive 1–06 also preserved the exact confidentiality provisions that had appeared in Directive 7–91. Those provisions governed the use of UDIR forms when defendant sought representation by a public defender.

As the history of the Directive makes clear, it was focused on information about two sensitive topics: the defendant's physical and mental health and his or her drug and alcohol use. Nothing

in the record of the proceedings leading to the Directive—or in the Directive itself—reveals that the Criminal Presiding Judges or the Court was focused on protecting financial information provided by a defendant to secure the services of a public defender, or suggests an intent by this Court to shield false financial disclosures made to defraud the Office of the Public Defender. To the contrary, the current UDIR form requires any defendant seeking public defender representation to certify that the information that he or she has provided is true. The form places a defendant on notice that a willfully false financial disclosure may subject him or her to punishment.

Nevertheless, Directive 1–06 plainly constrains the use of the information submitted on the form. It reassures defendants that "information on the intake form may not be used in grand jury proceedings or at trial, even for purposes of cross-examination." The Directive that governed the UDIR signed by defendant thus contained an unequivocal representation that the information provided on the form would remain confidential.

## IV.

Our review of the trial court's decision to quash the State's trial subpoena implicates two competing concerns. Our judicial system must protect defendants who claim to be indigent from the unwarranted disclosure of sensitive personal information submitted to the court system to obtain court-appointed counsel. It must also preserve the Public Defender's limited resources for those who need them and permit the prosecution of non-indigent defendants who fraudulently access legal services at public expense.

## A.

We review the trial court's decision to quash the subpoena pursuant to an indulgent standard of review. Decisions of trial courts on discovery matters are upheld unless they constitute an abuse of discretion. *Pomerantz Paper Corp. v. New Cmty. Corp.,*

207 *N.J.* 344, 371, 25 *A.*3d 221 (2011). Thus, the reviewing court "'generally defer[s] to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law.'" *Ibid.* (quoting *Rivers v. LSC P'ship,* 378 *N.J.Super.* 68, 80, 874 *A.*2d 597 (App.Div.), *certif. denied,* 185 *N.J.* 296, 884 *A.*2d 1266 (2005)). The court's legal interpretation is subject to de novo review; "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." *Manalapan Realty, L.P. v. Twp. Comm.,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995).

The State sought to obtain defendant's UDIR form with a trial subpoena. To justify its trial subpoena, the State is required to make "a substantial showing that [the subpoenaed documents] contain evidence relevant and material to the issue[s]" at trial. *State v. Cooper,* 2 *N.J.* 540, 556, 67 *A.*2d 298 (1949); *In re Grand Jury Subpoena Duces Tecum,* 143 *N.J.Super.* 526, 534, 363 *A.*2d 936 (Law Div.1976); *see also State v. Medina,* 201 *N.J.Super.* 565, 580–81, 493 *A.*2d 623 (App.Div.) (upholding quashing of trial subpoenas based on ruling that witnesses would not offer testimony admissible at trial), *certif. denied,* 102 *N.J.* 298, 508 *A.*2d 185 (1985).

## B.

We must determine whether the State can obtain defendant's UDIR form, either to apply to the court for termination of defendant's court-appointed counsel or to investigate and prosecute defendant for false swearing and/or fraud. We begin by considering the relevance of the disputed discovery.

The discovery sought by the State is not essential to the court's review of the State's challenge to defendant's indigency status. The Assignment Judge of each vicinage has statutory authority to review a defendant's eligibility for Public Defender assistance and grant or deny an application to rescind the determination of indigency. *See N.J.S.A.* 2A:158A–15.1. When a defendant has

been granted public defender representation and the court "subsequently ... determine[s] that the defendant is ineligible [the Office of the Public Defender] shall so inform the defendant, and the defendant shall thereupon be obliged to engage his own counsel and to reimburse the office for the cost of the services rendered to that time." *N.J.S.A.* 2A:158A–14.[3] The Assignment Judge need not rely upon discovery conducted by the State in order to review the defendant's UDIR form. He or she may "obtain information from any public record office of the State or of any subdivision thereof on request and without payment of the fees ordinarily required by law." *N.J.S.A.* 2A:158A–15.1.

In this case, the Assignment Judge may obtain the UDIR form from the Criminal Part, compare defendant's disclosure on the form with other financial data made available to the court in connection with the application, and determine whether defendant is legitimately entitled to publicly financed legal assistance.[4] Because in this case defendant's financial documents are uncomplicated, the Assignment Judge may analyze them in camera without the assistance of counsel or experts. *Cf. Team Obsolete, Ltd. v. A.H.R.M.A. Ltd.*, 464 *F.Supp.*2d 164, 164–65 (E.D.N.Y.2006) (finding in camera review appropriate to evaluate fee dispute between defendants and defendants' counsel because "plaintiffs have no legitimate interest in learning the specifics of [the] dispute"). Thus, the State's subpoena for production of the UDIR form is not essential to the Assignment Judge's scrutiny of the financial data

---

[3] In some cases, defendants who can afford the cost of public defender services may be required to pay for services of appointed counsel after those services are rendered. *See N.J.S.A.* 2A:158A–16. The Office of the Public Defender must place a lien on the defendant's property if the value of the services rendered "appears to exceed $150," *N.J.S.A.* 2A:158A–17, and it "shall do all things necessary and proper to collect all moneys due to the State by way of reimbursement for services rendered," *N.J.S.A.* 2A:158A–19.

[4] Nothing in this opinion prevents the State or any other person or entity from providing to the Assignment Judge any evidence that bears on defendant's qualification for public defender representation.

at issue in this case or to his critical review of defendant's claim of indigency.

However, the discovery at issue is relevant to the State's potential prosecution of defendant for a fraudulent financial disclosure. A defendant who misrepresents his or her assets to obtain a public defender may be prosecuted under at least two different criminal statutes. Under *N.J.S.A.* 2C:28–2(a), a defendant may be guilty of false swearing on the certified form if the State demonstrates that the statement "was false and not believed by the defendant to be true." *State v. Bzura,* 261 *N.J.Super.* 602, 610, 619 *A.*2d 647 (App.Div.), *certif. denied,* 133 *N.J.* 443, 627 *A.*2d 1147 (1993). A defendant who submits a false UDIR form may also be guilty of theft by deception, *N.J.S.A.* 2C:20–4, for purposely creating a false impression that he was entitled to obtain taxpayer-funded legal services. *See State v. Krueger,* 241 *N.J.Super.* 244, 249, 574 *A.*2d 1006 (App.Div.1990) ("Theft by deception occurs where one obtains the property of another by purposely creating a false impression." (internal quotation marks and citation omitted)). Thus, the State's subpoena meets the test of relevancy to the extent that it furthers an investigation of a potential criminal violation arising from defendant's alleged submission of a fraudulent UDIR form.

## V.

■ Notwithstanding the relevancy of the information sought by the State to a potential criminal prosecution, we hold that the information is not subject to disclosure in response to the State's trial subpoena. The Directive that governed defendant's disclosure unambiguously assured him that the financial information on the UDIR form would not be used in a grand jury proceeding or at trial. *See supra* at 161–62, 68 *A.*3d at 316. Any decision permitting the State to obtain this information pursuant to a trial subpoena would directly contravene the Directive's terms. The trial court thus properly quashed the State's trial subpoena.

While in this case the Directive prohibits use of defendant's UDIR form to prosecute him for false swearing or fraud, the Assignment Judge nonetheless may determine that defendant was deemed indigent because of a false financial disclosure. The State's affidavit and supporting exhibits suggest that defendant has an interest in several properties, that he has made regular payments on mortgages and a home equity line of credit, and that he represented employment and substantial income on a car lease application. We refer those proofs to the Assignment Judge for further consideration and note that the Assignment Judge may compare the information submitted by the State with defendant's UDIR form without disclosing the UDIR form. If the Assignment Judge finds that defendant did not qualify for appointed counsel, he may terminate the appointment. *See N.J.S.A.* 2A:158A–14, –15.1.

We do not reach the issue upon which the trial judge and Appellate Division panel decided this case—whether the attorney-client privilege applies to financial statements made on the UDIR form. *See In re Subpoena, supra,* 420 *N.J.Super.* at 186–92, 19 *A.*3d 1032. We do not necessarily adopt the Appellate Division panel's analysis of the privilege issue. If, in a future case, a defendant claims that information set forth on a UDIR form is shielded by the attorney-client privilege notwithstanding the setting in which that information is provided, the reviewing court should conduct a fact-specific determination in accordance with settled principles governing the privilege. *See N.J.S.A.* 2A:84A–20; *N.J.R.E.* 504; *Upjohn Co. v. United States,* 449 *U.S.* 383, 389, 101 *S.Ct.* 677, 682, 66 *L.Ed.*2d 584, 591 (1981); *Fellerman v. Bradley,* 99 *N.J.* 493, 502, 493 *A.*2d 1239 (1985); *see also In re Richardson,* 31 *N.J.* 391, 401, 157 *A.*2d 695 (1960) (noting that courts must balance need for relevant evidence and importance of maintaining attorney-client confidentiality).

## VI.

Although the existing Directive controls the outcome of this case, we cannot conclude that it was intended to effectively

immunize an intentionally false statement by a defendant to obtain free appointed counsel. *See United States v. Kahan,* 415 *U.S.* 239, 248, 94 *S.Ct.* 1179, 1183, 39 *L.Ed.*2d 297, 304 (1974) (Marshall, J., dissenting) (recognizing that where defendant must provide financial information to obtain appointed counsel, it is wrong to "permit[ ] the defendant to perjure himself and remain free from sanction"). On the other hand, we also recognize that subpoenas for UDIR forms tread on sensitive ground. Defendants who complete intake forms are seeking the services of counsel to defend against criminal charges, asserting an indigent defendant's right to appointment of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I, paragraph 10 of the New Jersey Constitution. *See U.S. Const.* amend. VI; *N.J. Const.* art. I, ¶ 10; *Horton, supra,* 34 *N.J.* at 522, 170 *A.*2d 1 (1961); *see also Gideon v. Wainwright,* 372 *U.S.* 335, 344, 83 *S.Ct.* 792, 796, 9 *L.Ed.*2d 799, 805 (1963) ("[I]n our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him."). Permitting prosecutors to obtain a defendant's application for public defender representation runs the risk of intruding on the defendant's right to obtain a public defender attorney.

In an effort to balance these concerns, we hold that disclosure of the financial section of a defendant's UDIR form where the State seeks to investigate and prosecute the defendant for false swearing and/or fraud is proper only in limited circumstances. We rely on the Court's supervisory powers to impose certain guidelines in this area. *See N.J. Const.* art. VI, § 2, ¶ 3. Going forward, prosecutors must satisfy them to obtain financial information that defendants supply on an intake form.

 First, to avoid any possible confusion about the scope of confidentiality that the intake form affords defendants, the current form should be modified. The page that elicits employment and financial information should include the following additional warning: "At the direction of the Assignment Judge acting on his or

her own initiative, or in response to a valid grand jury subpoena with the approval of the Assignment Judge, this page (UDIR–3) may be produced to a grand jury and a prosecutor." [5] The Directive's language regarding confidentiality should be revised accordingly.

■ Second, if prosecutors seek to preserve the option to subpoena the financial and employment information that defendants supply on the intake form, they must ask the trial court to have the defendant affirm three things at an early court appearance attended by court-appointed counsel: (1) that the information that defendant supplied in the UDIR about his or her finances and employment is true; (2) that the defendant understands that willfully false statements on the form about those areas may subject him or her to punishment; and (3) that the defendant understands that information about finances and employment may be disclosed to a grand jury and the prosecution. The colloquy in open court will confirm defendant's understanding of the purpose and significance of the UDIR form and will resolve any uncertainty in situations in which the defendant has prepared his form by telephone or videoconference and has not signed the form. Moreover, the defendant should be given the opportunity to review and amend the financial information he or she submitted in light of this colloquy.

■ Third, the defendant's financial disclosures on the UDIR form should not be used by the prosecution to prove the pending case, even if the defendant's finances are relevant to the pending charges. *See, e.g., United States v. Gravatt,* 868 *F.*2d 585, 590 (3d Cir.1989) (noting conflict between requiring financial information to appoint counsel and preserving privilege against self-incrimination where defendant is charged with financial crimes). To protect against the use of information provided by defendants in the pending trial, and to guard against improper accusations of abuse,

---

[5] *See R.* 3:6–6(a) (permitting prosecutor to be present during grand jury proceedings).

a separate team of prosecutors and investigators—who are not involved with the pending case—should be assigned to any new investigation relative to the contents of the UDIR form.

Fourth, prosecutors who seek disclosure of financial data in UDIR forms should proceed by way of a grand jury subpoena, not a trial subpoena as was done in this case. By definition, the purpose of a trial subpoena is to obtain information for use in connection with a pending trial. *See Cooper, supra*, 2 *N.J.* at 556, 67 *A.*2d 298; *In re Grand Jury Subpoena Duces Tecum, supra*, 143 *N.J.Super.* at 534, 363 *A.*2d 936. Because we hold that the defendant's financial disclosures to obtain a public defender should not be used to prosecute the pending case, a grand jury subpoena is the appropriate mechanism by which a defendant's UDIR form may be sought in an appropriate case. A grand jury's broad investigative powers permit it to investigate a defendant's potential fraud and false swearing. *See Branzburg v. Hayes*, 408 *U.S.* 665, 688, 92 *S.Ct.* 2646, 2660, 33 *L.Ed.*2d 626, 643 (1972); *see also United States v. Dionisio*, 410 *U.S.* 1, 13, 93 *S.Ct.* 764, 771, 35 *L.Ed.*2d 67, 78–79 (1973) (noting that "grand jury's investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed" (internal quotation marks and citation omitted)). A grand jury can continue to subpoena evidence even after issuing an indictment where its purpose is to collect evidence about additional criminal conduct, even if that evidence is also relevant to pending charges. *In re Grand Jury Subpoena Issued to Galasso*, 389 *N.J.Super.* 281, 300–01, 913 *A.*2d 78 (App.Div. 2006); *see also State v. Francis*, 191 *N.J.* 571, 591–92, 926 *A.*2d 305 (2007) ("If the claims of grand jury abuse arise in respect of the use of the grand jury after an indictment has been returned, . . . use of the grand jury is permitted unless the dominant purpose of that use was to buttress an indictment already returned by the grand jury.") A grand jury subpoena is thus proper to investigate whether the defendant misrepresented his or her assets to obtain public representation. In short, if the State

seeks disclosure of financial information in a defendant's UDIR form, it should proceed by way of a grand jury subpoena, not a trial subpoena.

Fifth, grand jury subpoenas should be presented to the Criminal Division Manager and the Assignment Judge along with an accompanying affidavit from the prosecutor that details the basis for the subpoena—a showing that the intake form contains false financial information. *See In re Grand Jury Proceedings (Schofield I )*, 486 *F.*2d 85, 93 (3d Cir.1973) (holding where government seeks to force recalcitrant witness to testify before grand jury, it must show why subpoena is proper). The Assignment Judge shall determine, within his or her discretion, whether the State's proofs justify disclosure of the intake form. *See In re Grand Jury Subpoena*, 223 *F.*3d 213, 216 (3d Cir.2000). We expect that it will be the rare case in which the State presents sufficient proof of fraud to warrant disclosure.

## VII.

In this case, the State's trial subpoena conflicts with the existing Directive. Because defendant is entitled to the benefit of the long-standing practice embodied in the Court's Directive—that "information on the intake form may not be used in grand jury proceedings or at trial"—the trial court properly quashed the subpoena.

For the reasons set forth above, we modify and affirm the judgment of the Appellate Division. We remand the matter to the Assignment Judge for a determination of defendant's indigency. *See N.J.S.A.* 2A:158A–15.1. Should the Assignment Judge determine that defendant is not indigent, he shall withdraw the appointment of counsel and require defendant to reimburse the Office of the Public Defender for the costs of services rendered. *See N.J.S.A.* 2A:158A–14.

For future cases, we modify the existing Directive to permit disclosure of UDIR forms to investigate and prosecute a defen-

dant's misrepresentation of financial status, subject to the following guidelines: (1) the UDIR form must warn the defendant that at the direction of the Assignment Judge acting on his or her own initiative, or in response to a grand jury subpoena with the approval of the Assignment Judge, the defendant's statements about financial status can be disclosed to the grand jury and a prosecutor; (2) the defendant must affirm that he or she understands the possibility of disclosure at an early court appearance and be given the opportunity to review and amend his or her financial statements; (3) prosecutors and investigators involved in the pending case should not participate in the fraud investigation; (4) the prosecutor must proceed with a grand jury subpoena; and (5) the Assignment Judge should permit disclosure of the UDIR form only upon a showing of possible fraud.

We direct the Director of the AOC to issue a revised Directive and modified UDIR form consistent with this opinion.

Justices LaVECCHIA, ALBIN, HOENS, and PATTERSON and Judges RODRÍGUEZ and CUFF (both temporarily assigned) join in this opinion. Chief Justice RABNER did not participate.

*Affirmed as Modified/Remanded*—Justices LaVECCHIA, ALBIN, HOENS, PATTERSON, and Judges RODRÍGUEZ (temporarily assigned), CUFF (temporarily assigned)—6.

*Opposed*—None.