**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4327-18T2

NIDAL MATAHEN, MAHER
AL BADRI, MAHMOUD ABU
ROMI, and MOBIN A. SHEIKH,

      Plaintiffs-Respondents,

v.

MAZOOZ SEHWAIL, NABIL
ABASSI, MOHAMED QATANANI,
FOUAD RASHED, SAMIR
OBEDALLAH, OMAR AWED,
NASIR SALIM, ABDUL KADER,
MAHMOUD KARKIS, and THE
ISLAMIC CENTER OF PASSAIC
COUNTY, INC.,

      Defendants-Appellants.

_____

Argued June 4, 2020 – Decided October 19, 2020

Before Judges Suter and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-0895-19.

Zachary D. Wellbrock argued the cause for appellants (McCusker Anselmi Rosen & Carvelli, PC, attorneys;

Asaad K. Siddiqi and Zachary D. Wellbrock, on the briefs).

Michael P. De Marco argued the cause for respondents (De Marco & De Marco, attorneys; Michael P. De Marco, on the brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Defendants appeal the May 30, 2019 order denying reconsideration of an earlier order that enforced subpoenas issued in a private arbitration. We affirm in part and modify in part the order denying reconsideration and the order enforcing the subpoenas.

## I.

Nicholas Matahen, Maher Al Badri, Mahmoud Abu Romi and Mobin A. Sheikh (plaintiffs) allege they are current or former members of the Islamic Center of Passaic County (ICPC). Defendants include the ICPC, Mazooz Sehwail (Sehwail), the then secretary of the ICPC and former employee, Nabil Abbassi,[1] the then chairman of ICPC's Board of Trustees and former employee, Mohamed Qatanani, the Imam of the ICPC, and Fouad Rashed, Samir

---

[1] His name is spelled "Abbassi" throughout the appendix but not in the caption.

Obedallah, Omar Awed, Nasir Salim, Abdul Kader, and Mahmoud Karkis (collectively, defendants).

In 2015, plaintiffs sued defendants to "restrain financial abuses at ICPC" which they alleged violated the ICPC's by-laws. They alleged Sehwail used an ICPC credit card for hotel charges and other personal expenses. Plaintiffs alleged that Abbassi "improperly authorized payment from ICPC funds for school tuition for [his] three . . . children." The complaint alleged "mismanagement of and/or self-dealing concerning ICPC funds" and sought an accounting. It alleged unjust enrichment, conversion, and fraud and requested damages. It also alleged violations of the by-laws by defendants and requested removal of the then current members of the Board of Trustees.

Defendants denied the allegations and moved to dismiss the complaint, alleging that an arbitration clause in the by-laws compelled all the claims to be submitted to arbitration. In 2016, we reversed an order of the trial court, which required some, but not all, of the claims to be arbitrated, determining that all claims were to be referred for arbitration. See Matahen v. Sehwail, No. A-4312-14 (App. Div. March 24, 2016) (slip op. at 2). The complaint was dismissed from the Superior Court.

3

In December 2018, plaintiffs advised the arbitrators that they proposed to subpoena records from New Jersey Manufacturers Insurance Company (NJM), which was Sehwail's homeowners' insurer, and from York Restoration Corporation (York), Abbassi's employer. Plaintiffs claimed Sehwail used an ICPC credit card to pay for six weeks of hotel expenses for himself and his family after their house was destroyed in a fire. Plaintiffs alleged Sehwail claimed to have reimbursed the ICPC "from funds that he received from NJM in response to his insurance claim for lodging expenses."

Plaintiffs claimed Abbassi enrolled his children in schools run by the Islamic Education Foundation, but at the expense of the ICPC. They contended that Abbassi received "tens of thousands of dollars in tuition credits for 'roofing repairs.'" Abbassi explained in his deposition that he "brought in" a roofing subcontractor used by York to fix the roof of the Al Ghazaly High School. When the school did not have enough money to pay the subcontractor, the school proposed it would provide Abbassi with tuition credits for his children, if York, his employer, paid the subcontractor using monies that York owed to Abbassi for travel reimbursement. Plaintiffs wanted to subpoena York's records to explore this.

Defendants opposed this application. Defendants contended that the NJM check was issued on March 20, 2012, and deposited by the ICPC shortly after that on April 11, 2012, and that Sehwail overpaid the ICPC for the hotel charges. They produced copies of the front of the NJM check that included the date, and a deposit slip allegedly including the check amount for the ICPC account.

Defendants argued that plaintiffs were confusing the ICPC portion of the tuition with the personal portion of the tuition owed by Abbassi. They admit Abbassi accepted tuition credits on the personal portion of the tuition for arranging to pay the amount the school owed to the subcontractor. Abbassi did this "by signing over to it some amounts that Mr. Abbassi was owed from York."

On March 4, 2019, the Islamic Arbitration Committee Panel (Arbitration Panel) entered a discovery order providing that "[t]he Arbitration Panel grants [p]laintiffs' request to [NJM] and [York] for production of the documents identified in [plaintiffs' counsel's] December 31, 2018 letter." The subpoena to NJM[2] requested:

> [t]he entire file relating to the claim of Mazooz Sehwail and [his wife] relating to [a specific address] including, but not limited to, copies of the fronts and backs of all checks issued by NJM to Mazooz Sehwail and/or [wife]; all claim forms submitted by and/or executed by Mazooz Sehwail and/or [wife]; all documentation

---

[2] NJM has complied with the subpoena.

submitted by Mazooz Sehwail and/or [wife] in support of their claim; all correspondence between NJM and Mazooz Sehwail and/or [wife] relating to their claim; and all other documents maintained by NJM relating to this claim.

The subpoena to York requested:

[a]ll documents evidencing payments made to subcontractors from funds otherwise due to Nabil Abbassi for labor and/or material provided by any such subcontractor relating to the roofing project at Al-Ghazaly High School, including the fronts and backs of all checks issued by York to any subcontractor and documents confirming the amounts due to Nabil Abbassi.

Plaintiffs filed an order to show cause and complaint in the Superior Court requesting a summary action to confirm the ruling of the Arbitration Panel, and permitting plaintiffs to serve the subpoenas on NJM and York. The complaint demanded judgment permitting plaintiffs to serve the subpoenas. The trial court converted the order to show cause "to [a] regular motion."

Defendants opposed the order to show cause, filing a cross-motion to quash the subpoenas. They argued the trial court was not required to defer to the Arbitration Panel because there is nothing in NJM's claim file about Sehwail's house fire or York's business records that could possibly lead to the discovery of relevant evidence. They claimed plaintiffs were disgruntled because they did not receive enough votes to be members of the ICPC Board.

6

Defendants argued the NJM subpoena was overly broad and moot. They explained that ICPC President Mohammed El Filali used the ICPC credit card to pay for lodging for the Sehwail family after the fire as an act of charity. Sehwail reimbursed the ICPC with the check he received from NJM. Defendants argued there was no need to produce the entire NJM claim file except to harass Sehwail. They asserted the claim was moot because they already submitted sufficient documentation to support Sehwail's allegations: a copy of the front of the check; the deposit slip listing what was asserted to be the NJM check for $4109.38, which was deposited along with other checks totaling $13,934.38 in the ICPC account; and an ICPC bank statement showing the deposit of $13,934.38.

Regarding the York subpoena, defendants argued that plaintiffs "conflated" the portion of the school tuition paid by ICPC and the portion that Abbassi paid himself. They argued it was not relevant if the school or the subcontractor was underpaid, and that none of this could lead to the discovery of relevant evidence.

The trial court granted plaintiffs' motion and denied defendants' cross-motion to quash. In a rider to the April 16, 2019 order, the court noted that N.J.S.A. 2A:23B-17(a) permits an arbitrator to issue a subpoena for the

production of records, and it can be enforced by a party to the arbitration by filing a summary action with the Superior Court. Also, N.J.S.A. 2A:23B-17(g) gave the court the authority to enforce orders or subpoenas issued by an arbitrator. Based on this authority, the court granted enforcement of the order issued by the Arbitration Panel.

Defendants requested reconsideration, claiming the trial court "may not have considered [d]efendants' primary arguments." They argued the trial court did not analyze their request to quash the subpoenas under Rule 1:9-2 or Rule 4:10-3. Although the court can enforce a subpoena, they argued the court was not required to defer to the Arbitration Panel because there was no arbitration award. Defendants contended the subpoenas are unreasonable and oppressive because they will not lead to the discovery of admissible evidence and the NJM subpoena was overly broad. Additionally, they contended the York subpoena was "unwarranted" because it related to the payments that Abbassi needed to make to the school, not the ICPC portion.

Plaintiffs opposed the motion for reconsideration, arguing they had a right to explore the contentions Sehwail made about payments and the manner of reimbursement. They argued the check produced was incomplete. The subpoena "will bear directly upon whether [d]efendant, in fact, made a claim

8

specifically for lodging expenses, and if so, in what amount and whether the NJM check (D00561) was endorsed and delivered to [the] ICPC." These matters also bear on Sehwail's credibility. With respect to the York subpoena, plaintiffs argued the documents are "crucial" in assessing his credibility. Defendants reiterated their arguments in reply.

The trial court's May 30, 2019 order denied reconsideration, explaining it had considered all the parties' papers. The trial court found defendants' arguments regarding "discoverability" lacked merit, and the information that plaintiffs sought was "relevant." The arbitrators also considered the information relevant in issuing the subpoenas.[3]

On appeal, defendants contend the trial court applied the wrong legal standard because there was no arbitration award to confirm. They argue the trial court did not perform any analysis or consider the primary arguments they raised. They contend the trial court should have applied appropriate discovery standards, that neither subpoena identified a basis for discovery, and that impeachment evidence would not be admissible. Defendants assert neither subpoena could lead to the discovery of admissible evidence or have any bearing

---

[3] Defendants' motion for a stay of the order was denied by the trial court. We also denied a stay pending appeal and a motion for summary disposition.

on any dispute between the parties. Both subpoenas are unreasonable and oppressive, according to defendants, and only are intended to harass. Defendants assert the NJM subpoena is moot.

II.

Our review is limited because defendants appeal an order denying reconsideration. State v. Puryear, 441 N.J. Super. 280, 294–95 (App. Div. 2015). Reconsideration is not appropriate merely because a litigant is dissatisfied with a decision. D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). Reconsideration is appropriate only where "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Ibid. Reconsideration may be granted where "a litigant wishes to bring new or additional information to the [c]ourt's attention which it could not have provided on the first application." Ibid.

Reconsideration was properly denied here because defendants simply were restating what they previously argued. The court stated in its order that it took all the arguments and filings into consideration in determining there was no merit to defendants' position, and that the information requested was relevant.

10

The court found the arbitrator had the legal authority to issue the subpoenas and that the court had the ability to enforce them. There then was nothing palpably incorrect or irrational about the court's order denying reconsideration.

Defendants' notice of appeal also referenced the order that granted plaintiffs' motion to enforce the subpoenas and denied defendants' cross-motion to quash. We discern no abuse of discretion by the court in entering the order but modify the order to limit it to hotel expenses.

N.J.S.A. 2A:23B-17(a) expressly provides that "[a]n arbitrator may issue a subpoena for the attendance of a witness and for the production of records and other evidence at any hearing and may administer oaths." It also grants the trial court the authority to enforce orders or subpoenas issued by the arbitrator. Ibid. A subpoena can be enforced by "filing a summary action with the court by a party to the arbitration proceeding or the arbitrator, [and then] enforced in the manner for enforcement of subpoenas in any civil action." Ibid. Plaintiffs filed a summary action when they filed the order to show cause and complaint. The court converted that to a motion. There was no objection to the process at the trial court.[4]

---

[4] Defendants argue in their reply brief for the first time that New Jersey courts do not have the power to enforce the subpoena directed to York because it is a

A subpoena may be employed as a method to obtain pre-trial discovery. R. 1:9–2; R. 4:14–7. Rule 4:10-2 governs the broad scope of discovery. Under Rule 4:10-2(a), "parties may obtain discovery regarding any non-privileged matter that is relevant to the subject of a pending action or is reasonably calculated to lead to the discovery of admissible evidence." In re Liquidation of Integrity Ins. Co., 165 N.J. 75, 82 (2000). Relevant evidence is "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." See N.J.R.E. 401. Inadmissibility of evidence is not a ground for objection "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." R. 4:10-2(a).

The court on motion, "may quash or modify the subpoena or notice if compliance would be unreasonable or oppressive." R. 1:9-2. We review a trial judge's decision to quash a subpoena for an abuse of discretion. In re Subpoena Duces Tecum, 214 N.J. 147, 162 (2013).

The trial court did not abuse its discretion in granting enforcement of the subpoenas based on a finding that the information requested was relevant.

---

New York company. We need not consider defendants' argument because it was not raised before the trial court or in its initial brief on appeal. Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

Sehwail testified in his deposition that he submitted a claim to NJM and did not indicate the hotel was paid for by the ICPC. However, he said he submitted receipts to NJM. He also argued he reimbursed the ICPC for more than what it had paid. NJM's claim file with the receipts and checks could lead to information about what was paid by the ICPC and then what was reimbursed. Plaintiffs should be able to verify this through the claim file. That said, however, it is not clear why portions of the claim file that do not relate to hotel expenses are relevant. The only issue raised by plaintiffs related to the hotel expenses. Therefore, we modify the court's order to enforce only that portion of the NJM subpoena that related to the hotel expenses following the house fire.

With respect to the tuition credits for Abbassi, the question is whether the ICPC paid for his portion of the school's tuition. Abbassi gave a fairly elaborate explanation for why the ICPC did not pay his portion of the tuition, but only York would have the information about the travel expenses owed to Abbassi, whether these were paid to the subcontractor and whether they were substantially equivalent to the tuition credit Abbassi received. Thus, the information requested in the subpoena to York was relevant.

13

There also is no indication the subpoenas are oppressive or unreasonable. NJM has already complied with the subpoena. York's documentation would relate to one roofing construction job.

Affirm in part; modified in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4327-18T2