**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0980-20

KARL HALLIGAN,

     Plaintiff-Respondent,

v.

BEDERSON, LLP, SEAN
RAQUET, CPA, CFE, JOHN
O'CONNOR, and HARRY
HODKINSON,

     Defendants-Respondents,

_____

ANDREW R. TURNER,

     Appellant.

_____

        Argued April 14, 2021 – Decided June 1, 2021

        Before Judges Fuentes and Whipple.

        On appeal from an interlocutory order of the Superior
        Court of New Jersey, Law Division, Hudson County,
        Docket No., L-1494-19.

        Andrew R. Turner, appellant, argued the cause pro se.

Steven Menaker argued the cause for respondent (Chasen Lamparello Mallon & Cappuzzo, PC, attorneys; Steven Menaker, on the brief).

PER CURIAM

On leave granted, appellant, Andrew Turner, an attorney, appeals the Law Division's October 16, 2020 order denying his motion to quash a subpoena. We affirm. We have drawn the following relevant facts from the record.

Halligan I.

Karl Halligan was the plaintiff during the two prior suits against the defendants. Halligan sued his former business partners, John O'Connor and Harry Hodkinson. Halligan, O'Connor, and Hodkinson formed two companies: Park Avenue Bar & Grill, LLC (Park Avenue), a restaurant and tavern; and H&H Real Estate Investments, LLC (H&H),[1] where Halligan was the managing member. For numerous reasons, Halligan's relationships with O'Connor and Hodkinson cooled, as early as when Park Avenue originally opened.

When Halligan filed his complaint in Halligan v. O'Connor (Halligan I), Docket No. HUD-C-55-12, he sought back salary, or management compensation payments, from the LLCs, O'Connor, and Hodkinson. Turner represented O'Connor and Hodkinson, and filed an answer and counterclaim seeking to

---

[1] H&H owned the building where Park Avenue operated.

2

dissociate Halligan from both businesses. Halligan's claims, and Hodkinson and O'Connor's counterclaims, were heard in a multi-day bench trial in the Chancery Division in 2013. This trial resulted in a judgment denying Halligan's attempt to force Hodkinson and O'Connor to sell their interest and his request for a valuation of the members' interest in the businesses. But the judge did grant Halligan's request for equity compensation, pro-rated salary compensation starting in April 2007, and reimbursement for taxes paid on behalf of the businesses.

The court denied O'Connor and Hodkinson's counterclaims for various personal and business accountings and monetary compensation from Halligan, but granted their request to dissociate Halligan from the businesses, with time for him to receive his interest and allocations. A modified judgment was entered on March 18, 2014, and Halligan relinquished management of the businesses to O'Connor and Hodkinson on March 21.

After Halligan relinquished management, Park Avenue filed for bankruptcy, starting with Chapter 11 reorganization, which was converted into a Chapter 7 liquidation that December. Bruce Levitt represented Park Avenue for the bankruptcy proceedings. On October 3, 2014, Turner wrote to O'Connor, Hodkinson, and Sean Raquet, a forensic accountant, during the bankruptcy

3

proceedings to suggest O'Connor and Hodkinson work with Raquet and his firm, Bederson, LLP, to determine how money was spent during Halligan's managerial role. Turner advised that Levitt should also be apprised of Raquet's involvement, as bankruptcy counsel.

On November 3, 2014, O'Connor responded to this email, copying his wife, Elizabeth O'Connor; Hodkinson; Hodkinson's wife, Denise Hodkinson; appellant; and Raquet. O'Connor had found evidence in the businesses' records showing Halligan paid for personal birthday parties, sports tickets, vehicles, vacations, and other entertainment or goods out of company funds. Eight days later, O'Connor sent nineteen pages of statements purporting to show Halligan improperly using the partners', or businesses' funds.[2]

Hours after O'Connor sent the list of Halligan's alleged misappropriations, Raquet wrote to O'Connor telling him Levitt would prepare the documents to have him represent same in the bankruptcy proceedings.[3] Raquet also told O'Connor the "Bederson report" would serve a dual purpose; once in the

---

[2] Denise, Elizabeth, Raquet, Hodkinson, and appellant were copied on this email.

[3] This email appears to be between only Raquet and O'Connor, based on the record provided.

4

bankruptcy process and once in the ongoing litigation between the three partners.[4]

On November 17, 2014, Raquet submitted the Bederson report to Levitt. The report alleged Halligan converted between $1,490,000 and $1,820,000 from Park Avenue, and the bankruptcy trustee sought to recoup this amount through an adversarial proceeding against Halligan. In essence, it was only the Bederson report that supported these figures. Further, the Bederson report was also used in November by appellant, on behalf of the businesses, to move to partially vacate Halligan's judgment because he purportedly improperly failed to plead the LLCs as defendants and lied about his compensation from the companies.

To resolve the improper pleading and the motion to vacate, the court allowed Halligan to amend his complaint and include Park Avenue and H&H on March 20, 2015, and issued a conforming order on April 6, 2015. On August 25, 2015, Halligan filed the amended complaint only against H&H, the Park Avenue assets were sold in May 2015 as a part of its Chapter 7 liquidation. Halligan retained Gwyneth Murray-Nolan in this proceeding, and Turner represented O'Connor and Hodkinson. The property H&H owned was sold for

---

[4] Turner, Hodkinson, and Elizabeth were copied on this email.

A-0980-20

$1,100,000, and the net proceeds, $845,151.56, were deposited into Murray-Nolan's trust account.

In July 2017, Murray-Nolan moved for the payment of her counsel fees and submitted a certification declaring that O'Connor and Hodkinson retained her to represent H&H, and that she had their approval. Hodkinson's accompanying certification, prepared by Murray-Nolan, stated that he executed her retainer agreement, was satisfied with her firm's representation, and requested her bill be paid.

That same month, on July 26, 2017, Hodkinson informed the trial court he and O'Connor were having a conflict, which led to them not speaking for at least a year prior. Hodkinson also stated he did not actually approve of Murray-Nolan being awarded counsel fees. Eventually, on July 26, 2019, the court allowed Halligan to withdraw his funds from the escrow account to satisfy his prior judgment.

Halligan II.

While the order to withdraw funds was pending, Halligan filed the instant case, Halligan v. O'Connor (Halligan II), Docket No. HUD-L-1494-19, on April 11, 2019, alleging fraud and intentional misrepresentation against O'Connor, Hodkinson, Raquet, and Bederson for how they presented the report and the list

A-0980-20

of alleged improper charges Halligan made. Turner was served two subpoenas duces tecum, with the latest being August 28, 2020. The subpoenas seek documents related to Turner's correspondence, draft reports, representation, or communications.

Hodkinson appeared for his deposition in this case on September 8, 2020, wherein he waived the attorney-client privilege as to himself and Turner. Turner then moved to quash the subpoena seeking appellant's oral deposition and relevant documents on September 25, 2020, which was denied by the court on October 16, 2020. This appeal followed.

I.

We review a trial court's decision to quash a subpoena under a deferential standard of review; therefore, decisions regarding "discovery matters are upheld unless they constitute an abuse of discretion." In re Custodian of Records, Criminal Div. Manager, 214 N.J. 147, 162-63 (2013) (citing Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)). Although a trial court's decision regarding the assertion of a privilege may call for de novo review, the court here did not order disclosure of privileged materials, directly or inferentially, besides those from Hodkinson, who waived his privilege. Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995).

7

Generally, parties may discover non-privileged information "which is relevant to the subject matter involved in the pending action." R. 4:10-2(a). If the discovery requests are "reasonably calculated to lead to the discovery of admissible evidence," an opponent's objection that the information will be inadmissible at trial is unavailing. Id. Nonetheless, "the scope of discovery is not infinite." K.S. v. ABC Prof'l Corp., 330 N.J. Super. 288, 291 (App. Div. 2000).

Here, Turner argues the court committed plain error by allowing Halligan's attorney to seek records of communications between himself and O'Connor. But that is simply not what the court's order did or said. The trial court's evaluation of the communication was straightforward in this regard:

> Denied as this [c]ourt finds Mr. Hodkinson did in fact waive his privilege in regard to his own communications with former attorney [appellant] per page [eleven] of his September 8, 2020 deposition. In Fellerman v. Bradley the Court emphasized "the privilege belongs to the client, rather than the attorney." 99 N.J. 493, 498 (1985). Moreover, N.J.S.A.[ ]2A:84-20 explains, "[a] communication made in the course of the relationship between lawyer and client shall be presumed to have been made in professional confidence unless knowingly made within the hearing of some person whose presence nullified the privilege." Here, the [c]ourt will allow the subpoena as to the communications between Turner and Hod[kinson], as well as any communications sent to or had in the presence of non-clients including, Sean Raquet, Denise

Hodkinson, Elizabeth O'Connor, Bruce Levitt, and
Bederson, LLP.

[(Emphasis added).]

Turner argues although Hodkinson waived the privilege, O'Connor did not, thus he essentially asserts a blanket privilege over any discovery that may involve himself and O'Connor, on O'Connor's behalf. Based on our review of the record, the elements necessary for Turner to assert the attorney-client privilege, which O'Connor did expressly preserve, are not present in the order entered by the court. Moreover, had the court granted Turner's motion, the court would have foreclosed Halligan's ability to depose him regarding non-privileged information. R. 4:10-2(a). Instead, Turner may assert the privilege in response to questions or document requests that would require him to reveal properly confidential communications on a question-by-question basis.

Turner also argues certain emails Hodkinson produced during discovery between himself and others are privileged, which indicates alternative availability of the sought communications, including:

> - [F]rom Turner to O'Connor, on which Hodkinson and third parties[5] were copied, recommending that Raquet be retained to perform "a forensic trail of monies

---

5  The third parties referred to here are Denise Hodkinson and Elizabeth O'Connor.

funneled through the business under Mr. Halligan's term of operation";

- [F]rom O'Connor to Raquet, on which third parties and Turner were copied, reporting on his compilation of information for Raquet's report;

- [F]rom O'Connor to Raquet, on which third parties and Turner were copied, forwarding nineteen pages of Quick Books account entries listing the "offending payments"; and,

- [F]rom Raquet to O'Connor, a third party, and Turner, advising that his report could be used "in both the [b]ankruptcy process and the [s]tate [c]ourt litigation."

## II.

"[T]here is a presumption that a communication made in a lawyer-client relationship has been made in professional confidence[,]" and where "applicable, '[the privilege] must be given as broad a scope as its rationale requires.'" Hedden v. Kean Univ., 434 N.J. Super. 10, 12 (2013) (quoting United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 561 (App. Div. 1984)). Ordinarily, the attorney-client privilege is waived when confidential communications are revealed to a third party. O'Boyle v. Borough of Longport, 218 N.J. 168, 186 (2014) (citations omitted). Here, the court allowed the communications that included Denise Hodkinson, Elizabeth O'Connor, Raquet, and Bederson to be discoverable as to Turner vis-à-vis the non-party disclosure

exception to the privilege. The court <u>did not</u>, however, require Turner to disclose those communications with O'Connor that did not include the third parties. Turner made no attempt to explain why the spouses of the parties were included here, and accordingly, we defer to the court's interpretation of whether Denise and Elizabeth were third parties for the purpose of vitiating the privilege. <u>In re Custodian of Records, Criminal Div. Manager</u>, 214 N.J. at 162-63 (citing <u>Pomerantz Paper Corp.</u>, 207 N.J. at 371).

"[T]he privilege accords the shield of secrecy only with respect to confidential communications made within the context of the strict relation of attorney and client." <u>United Jersey Bank</u>, 196 N.J. Super. at 562. Here, the court recognized, as did our Supreme Court in <u>State v. Mauti</u>, that "any party is free to waive a privilege." 208 N.J. 519, 537-38 (2012). Under N.J.R.E. 530, a privilege may be explicitly waived by contract, or by making or consenting to disclosure of privileged communications, "without coercion and with knowledge of [the client's] right or privilege." <u>Hedden</u>, 434 N.J. Super. at 15 (quoting N.J.R.E. 530). "[O]ur courts have also recognized that a privilege may be waived 'implicitly' where a party puts a confidential communication 'in issue' in a litigation." <u>Mauti</u>, 208 N.J. at 532 (quoting <u>Kinsella v. Kinsella</u>, 150 N.J. 276, 300 (1997)).

11

N.J.S.A. 2A:84A-20(2)(c) provides that the attorney-client privilege shall not extend to "a communication relevant to an issue of breach of duty by the lawyer to his client." Hodkinson expressly waived any privilege between himself and appellant, and the court did not suggest that a privilege objection to questions outside of appellant's communications with Hodkinson within the subpoena was unavailable. In short, given our court's preference for broad discovery, appellant may not avoid testimony or document production on non-privileged topics.

In sum, the court has not ordered Turner to disclose privileged communications to anyone, and objections based on privilege are still available. R. 4:14-3(c). The subpoena even noted Turner may claim a privilege for refusing to produce documents or testimony, and it provided instructions for how to proceed. This means Turner's conversations, held jointly with O'Connor and Hodkinson, would remain confidential because O'Connor has not waived the privilege—as the court order provided.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION